# EXCHANGE BANK OF WEWOKA *et al.* v. BAILEY.

No. 915.  Opinion Filed July 11, 1911.

(116 Pac. 812.)

1. **CORPORATIONS** — Receivers — Appointment — Action by Stock-holder.  Where the property of a corporation is being misman-aged or is in danger of being lost to the stockholders and credi-tors through mismanagement, collusion or fraud of its officers and directors, a court of equity has inherent power to appoint a receiver for the property of such corporation, and to require the officers to make an accounting upon petition of a minority stock-holder therefor.

2. **SAME—Action by Stockholder—Demand on Officers—Necessity.** Where the officers, of whose mismanagement and misconduct the plaintiff stockholder complains, are in control of the corporation, both by being the officers thereof and the holders of a majority of the stock, it is not necessary for a complaining stockholder to show as a condition necessary to maintain his suit that he first made demand on said officers to proceed on behalf of the cor-poration to remedy the wrongs complained of.

(Syllabus by the Court.)

*Error from District Court, Seminole County; A. T. West, Judge.*

Action by Samuel Bailey against the Exchange Bank of We-woka and others.  From an order granting a new trial and re-fusing to vacate same, defendants bring error.  Affirmed.

*Aubrey M. Fowler,* for plaintiff in error.

*Crump, Rogers & Harris,* for defendant in error.

HAYES, J.  This action was originally brought by defend-ant in error, suing on behalf of himself and for the benefit of the Exchange Bank of Wewoka, Ind. T., a corporation, against plaintiffs in error as defendants.  After answer was filed by de-fendants, the cause was referred to the master in chancery to take evidence and report his findings of fact and conclusions of law thereon.  The evidence was taken before the master on June 26, 1906; but it does not appear that any report on the facts or conclusions of law was made before the admission of the state into the Union.  After admission of the state into the Union, the cause was transferred to the district court of Seminole

county, under the provisions of the Enabling Act and the Schedule to the Constitution. Thereafter, on the 5th day of March, 1908, it was stipulated by the parties to the action that the evidence taken in the cause before the master in chancery should be submitted to the court in which the cause was then pending, the same as if taken before that court; and that the court should hear and dispose of said cause upon said evidence. Thereupon plaintiffs in error filed their demurrer to the evidence, and the court, upon hearing the same, sustained it and dismissed the cause, upon the ground that the court was without jurisdiction. Thereafter, upon plaintiff's motion, a new trial was granted. Subsequently a motion was made by defendants to vacate and set aside the order granting a new trial. It is from these orders granting a new trial and refusing to vacate and set aside the same that this appeal is prosecuted.

The rule prevailing in this court is that this court will very seldom and very reluctantly reverse a decision or order of the trial court which grants a new trial. It will be done only when it can be seen, beyond all reasonable doubt, that the trial court has manifestly and materially erred with respect to some pure, simple and unmixed question of law, and that except for such error, the ruling of the trial court would not have been so made. *Hogan et al. v. Bailey,* 27 Okla. 15, 110 Pac. 890; *Citizens' State Bank of Lawton v. Chattanooga State Bank et al.,* 23 Okla. 767, 101 Pac. 1118; *Linderman v. Nolan,* 16 Okla. 352, 83 Pac. 796. Since there is evidence tending to establish all the material facts alleged in plaintiff's petition, the sole question presented for our determination here is: Whether plaintiff, under the facts alleged in his petition, is entitled to any relief that a court of equity has jurisdiction to administer. In granting the new trial, the trial court, in effect, held that when it sustained the demurrer to the evidence and dismissed the cause for want of such jurisdiction, it had committed error, and that the trial court had jurisdiction to grant plaintiff relief upon the evidence and pleadings. Unless the trial court was in error in this conclusion, its order granting a new trial should be permitted to stand. For the purpose of de-

termining this question, it is unnecessary to set out *in haec verba* the allegations of the petition. A statement of the substance thereof will be sufficient.

The Exchange Bank is a corporation, organized and existing at the time of the institution of this action under the laws of the Indian Territory, with its principal place of business at Wewoka. It is alleged that said corporation was organized on the 1st day of December, 1903, with a capital stock of $15,000, divided into 600 shares at $25 each; that plaintiff subscribed for and has continued to be the owner of 240 shares of said stock, and that T. C. Cutlip and his two sons, C. Guy Cutlip and William Cutlip, subscribed for the remaining 360 shares; and that defendants . Peacher and Fowler each purchased 20 shares from the said Cutlips. T. G. Cutlip, C. Guy Cutlip and William Cutlip are directors of said corporation, and are respectively its president, cashier, and assistant cashier. Plaintiff paid in cash for his shares of stock the sum of $6,000, and has received certificates of stock therefor. He alleges that at the meeting of the stockholders in January, 1905, no certificate or statement of the condition of the affairs of the bank was made or rendered, and that the president and the cashier of the bank refused to make a statement of the business of the bank for the past year, or of the profits of said year; that they made a verbal statement to plaintiff of the profits for two years, but have steadily refused to make or furnish a statement in writing since its beginning, or to make any statement as to the gross profits of the bank, the salaries, cost, and expenses expended by the bank; and that all facts relative thereto have, with fraudulent intent, been concealed from the knowledge of the plaintiff, who has repeatedly demanded of the president and cashier a written statement of the affairs and conditions of the bank. He alleges that defendant T. G. Cutlip, president of the bank, has constantly overdrawn his account from $2,000 to $5,000; and that on January 6, 1905, his account was overdrawn to an amount exceeding $4,000; that on January 28th of the same year he had an overdraft of $1,998.97, and an item in the cash account against him of $2,960; and that the bank

also held unsecured notes executed by him as follows: One note for $400, one note for $5,425, making a total indebtedness due by T. G. Cutlip, the president of the bank, in the sum of $10,783.97; that the cashier, C. Guy Cutlip, was at the same time owing the bank two notes aggregating $561.53, making a total due the bank from its president and cashier of $11,345.50, a little less than four-fifths of the capital stock of the bank, and considerable more than the capital stock owned by the members of the Cutlip family; and that on February 28th preceding the 6th day of March, 1905, on which this action was filed, there was only about $1,000 in the bank to meet the demands of its business; that defendants T. G. Cutlip, C. Guy Cutlip, and William Cutlip are of one family and sustain the relation to each other of father and sons; that they own and control the majority of the capital stock, and are, by reason thereof, able to manipulate and control its business, and are doing so for their own personal welfare and interest, without regard to the rights and interests of plaintiff as one of its stockholders; that they have and are appropriating the moneys of the bank to their own personal use and benefit over the protest of plaintiff; that they refuse to permit plaintiff in any manner to participate in the management and control of the business or to give to him any information concerning the same, or to permit him to examine and ascertain for himself its condition; that the bills receivable account of the bank is short in the amount of $331.53, for which shortage the cashier can give no account; that the bank has deposits subject to check in the amount of $9,576.20, and owes on certificates of deposits the amount of $500; that it owes the Traders' Bank of Kansas City, Mo., $4,500, and other indebtedness, making a total of $5,459.46, to secure which a large amount of the bills receivable of the bank have been pledged as security, and that the bank now has on hand only $1,311.84 in cash with which to make payment of its depositors; that among the bills receivable of the bank, which is made to show as assets, is an item against one J. E. Sivils for $1,161, which the said Sivils claims to be paid; and that plaintiff is unable to determine

from the books of the bank whether the same has been paid or not; that the bank is insolvent; and plaintiff thereupon closes his petition with the following prayer:

"Wherefore plaintiff demands judgment and that it be decreed herein: (1) That a receiver be appointed to take charge of said bank and its entire property, both real and personal, and all other assets and convert them into money and pay off the depositors. (2) That after the depositors are paid in full, that the just debts owing by the said bank be paid, and that the residue be ratably distributed among the stockholders in accordance with their several rights. (3) That the president and the cashier and the board of directors of said bank be required to make disclosal by production of the books and papers belonging to said bank, and that an accounting of the transactions, profits and expenses of the operation of the said bank since its organization be taken, and that the profits of said bank, if any, be distributed as justice requires, and that all sums improperly drawn from said bank by the defendant T. G. Cutlip or members of his family be returned to said bank or charged in the final distribution to the guilty parties. (4) That said moneys due from the president or directors of said bank be paid to the receiver for the benefit of said corporation. (5) That the said corporation be dissolved and its charter revoked, and for such other and further relief as may be just, necessary, and equitable."

The principal contention of defendants is that a court of equity, in the absence of statutory authority, has no jurisdiction over corporations for the purpose of decreeing their dissolution and the distribution of the assets of the corporation among the stockholders at the suit of one or more of the stockholders; and that, since one of the reliefs for which plaintiff in this proceeding asks in his prayer is that the corporation be dissolved and its assets distributed among its stockholders, after paying all debts of the corporation, the trial court is without jurisdiction. This contention, in so far as it applies solely to proceedings to dissolve corporations and to wind up their affairs, finds support in section 119, Pomeroy's Eq. Jur., in the following language:

"It is well settled, with scarcely a dissenting voice, that in the absence of express statutory authority, a court of equity has no power to dissolve a corporation, or to wind up its affairs and sequestrate its property."

This statement from the text is supported as a general rule of law by almost all the decided cases; but the eminent author states in the same section that:

"A few exceptions have, however, been admitted to this rule; as, where the corporation had utterly failed of its purpose because of fraudulent mismanagement and misappropriation of the funds by the president and manager who owned a majority of its stock, a receiver was appointed to wind up its affairs at the suit of a minority stockholder.   *   *   *"

Some cases hold that a court of equity may dissolve a corporation, but only under extreme circumstances. It is unnecessary, however, to decide in this case under what circumstances, if any, a court of equity may decree a dissolution of a corporation and wind up its affairs, for, while this is one of the reliefs prayed for by plaintiff's petition, it is not the only relief asked, and the facts alleged clearly, we think, entitle plaintiff to other relief which a court of equity may administer; and if we assume, without deciding, that the trial court was without jurisdiction to dissolve this corporation and to wind up its affairs, there being other relief which it can afford to plaintiff upon the petition, the cause should not be dismissed. It is apparent from plaintiff's prayer that the principal relief he seeks is a dissolution of the corporation and a final settlement of its affairs with its creditors and its stockholders; but his prayer also asks for general relief, in that in addition to the specific relief prayed for, he prays, in the fifth paragraph of his prayer, for such other and further relief as may seem just, necessary, or equitable; and in addition to the general relief asked, plaintiff prays that defendants, Cutlips, the officers of the bank, shall be required to make an accounting and return to the bank all amounts of money that have been improperly drawn from the bank by them; and that the depositors and debts of the corporation be paid; and that a receiver be appointed to take charge of the bank and its entire property for these purposes.

"The inherent jurisdiction of a court of equity to appoint receivers of corporations, in proper cases, independently of statutory authorization, has been frequently recognized. The cases in which the power is most frequently invoked are as follows: (1)

In suits by stockholders seeking a remedy for breaches of their fiduciary duty by the directors or officers of the corporation. (2) After dissolution, where no means are provided by statute or otherwise for winding up the affairs of the corporation. (3) When the corporation has no properly constituted governing body, or there are such dissensions in its governing body as to make it impossible for the corporation to carry on its business with advantage. (4) In suits by judgment creditors of the corporation. (5) In suits for the foreclosure of mortgages or other liens upon the corporate property." (Pomeroy's Eq. Jur. vol. 5, c. 116.)

Section 3482, Ind, T. Statutes, in force in the jurisdiction where this action arose and was begun, provides that:

"Whenever it shall not be forbidden by law, and shall be deemed fair and proper in any case in equity, the court, judge or chancellor shall appoint some prudent and discreet person as receiver, who shall    *    *    *"

The foregoing statute constitutes in no way a limitation upon the general powers of a court of equity to appoint receivers.

"The power to appoint a receiver is necessarily inherent in a court which possesses equitable jurisdiction. It is exercised when an estate or fund is in existence and there is no competent person entitled to hold it; or the person so entitled is in the nature of a trustee, and is misusing or misapplying the trust; or the property is about to be removed beyond the reach of the court; and generally when it is necessary to secure rights and prevent a failure of justice. The property is thus placed in the hands of an officer of the law in order that it may be under the protecting care and control of the court and be delivered unimpaired to the persons to whom it is legally ascertained to belong." (Waterman on the Law of Corporations, vol. 2, § 356.) See, also, Morawetz on Private Corporations, § 642.

The officers of a corporation in the management and control of its assets are the trustees of the stockholders, and are charged with the faithful management of the corporate property for the accomplishment of the purposes for which the corporation is chartered; and where the corporation is insolvent, as the bank is alleged to be in this case, they are also the trustees of the creditors. It would certainly be a confession of extreme weakness in the power of a court of equity, which is presumed to afford a remedy where no adequate remedy at law can be had, to hold that plaintiff

in this case, under the facts, can be afforded no relief in equity; that he must resort to a court of law and have the corporation bring its action against these delinquent officers, who, for the purpose of such suit, are themselves the corporation, and would control every act of the corporation in the prosecution of that suit. How are these officers to be made to repay to the corporation the assets they have withdrawn from it by an action at law, when they must themselves bring that action, and would be practically, so far as the prosecution of such action is concerned, both plaintiffs and defendants? Again, how is plaintiff to know what kind of an action and what relief he is to ask for in a court of law, when he is without access to the books of the corporation, and defendant officers conceal from him the facts relative to its management, and the condition of its business? To compel the performance of a trust and prevent its abuse is one of the peculiar and valuable powers of a court of equity; and, where the officers of a bank, as in this case, have converted the money and property of the corporation to their own use, until the amount they owe the bank exceeds the total deposits, and when the bank has only approximately $1,000 with which to meet a liability of more than $9,000 to its depositors, if such acts do not constitute fraud, they at least constitute such gross mismanagement, the bank being insolvent, as to justify a court of equity in reaching out its arm and protecting the minority stockholders and the creditors of the bank by placing the assets of the bank in the hands of a receiver, and requiring an accounting of its officers and restoration of those assets they have withdrawn and appropriated to their own use. This power of a court of equity finds support in numerous cases. *Cameron v. Groveland Imp. Co.,* 20 Wash. 169, 54 Pac. 1128, 72 Am. St. Rep. 26; *Davis et al. v. United States Electric Power & Light Co. et al.,* 77 Md. 35, 25 Atl. 982; *Haywood and Another v. Lincoln Lumber Co. and Others,* 64 Wis. 639, 26 N. W. 184; *Ponca Mill Co. v. Mikesell,* 55 Neb. 98, 75 N. W. 46; *Edison et al. v. Edison United Phonograph Co. et al.,* 52 N. J. Eq. 620, 29 Atl. 195; *Neall v. Hill,* 16 Cal. 146, 76 Am. Dec. 508; *Wayne Pike Co. v. Hammons et al.,*

129 Ind. 368, 27 N. E. 487; *Merchants & Planters' Line v. Waganer,* 71 Ala. 581.

Nor was it necessary, in order to entitle plaintiff to maintain this action, that he request the defendant officers and directors to prosecute an action to obtain the relief desired, for when the defendant officers are directors of the corporation and own the controlling stock, and are in complete control of the corporation, and are shown to occupy such a relation to the transaction complained of that they would be antagonistic to the prosecution of an ction which a complaining shareholder would request, a demand that such officers bring and prosecute the action in the name of the corporation would be useless and is not necessary. *Ponca Mill Co. v. Mikesell, supra;* 10 Cyc. 978.

We do not undertake to anticipate the final judgment in this case by suggesting any provisions that such judgment should contain, in the event judgment is ultimately rendered in favor of plaintiff. Those are matters to be determined by the trial court after a hearing and examination of the evidence and findings of fact. It is sufficient for the purpose of this proceeding, that under the facts alleged in the petition, the court has jurisdiction under plaintiff's petition to grant him some relief.

Several propositions are urged by defendants in their brief relative to the facts as established by the evidence in the trial court, in which there is conflict, which they contend show that plaintiff is entitled to no relief in this action. Questions of fact are primarily for the trial court; and the propositions involving the evidence can be presented to the trial court at the new trial.

The order of the trial court is affirmed.

All the Justices concur.