**UNION STATE BANK OF SHAWNEE et al. v. MUELLER et al.**

No. 8431—Opinion Filed Feb. 12. 1918.

Rehearing Denied May 7, 1918.

(172 Pac. 650.)

(Syllabus.)

1. **Receivers—Appointment—Notice to Adverse Party.**

Where the petition for appointment of a receiver fails to state facts sufficient to show that the delay which would result in giving notice of the application to the adverse party would defeat petitioner's rights or result in injury to him, it is error for the court to appoint a receiver without notice.

2. **Same — Appointment Without Notice — Waiver.**

Where after a receiver is appointed without notice, the defendants filed motion to vacate and amended motion to vacate the appointment, and also filed answers to the merits and the issue upon the motion to vacate, and amended motion to vacate is tried and both sides are given ample opportunity of presenting fully their evidence and such evidence is presented, the error in making the appointment without notice is waived.

3. **Corporations—Receivers—Grounds—Mismanagement of Corporation.**

Where the property of a corporation is being mismanaged or is in danger of being lost to the stockholders through mismanagement, collusion, or fraud of its officers and directors, a court of equity has the inherent power to appoint a receiver for the property of such corporation, and to require its officers to make an accounting upon petition of the minority stockholders therefor.

Error from District Court, Tulsa County; Conn Linn, Judge.

Action by C. C. Mueller and others against the Arkansas River Bed Oil & Gas Company and others for the appointment of a receiver. From the denial of their motion to vacate the appointment of the receiver the

Union State Bank of Shawnee and others bring error. Affirmed.

Aby & Tucker and Abernathy & Howell, for plaintiffs in error.

Horace Speed, for defendants in error.

HARDY, J. C. C. Mueller and others commenced an action in the district court of Tulsa county against the Arkansas River Bed Oil & Gas Company and others as defendants, for the appointment of a receiver of certain property alleged to belong to the Arkansas River Bed Oil & Gas Company, upon which petition, and without notice of any kind or character to any of the defendants, the court on March 16, 1916, appointed a receiver as prayed, who thereupon gave bond and took possession of the property. The defendants who prosecute this proceeding filed motion and amended motion to vacate the appointment of said receiver, and also filed answers in said cause, and at a hearing had on said motion and amended motion to vacate offered evidence in support thereof, upon which hearing the court overruled said motion and refused to vacate the appointment theretofore made, from which action of the court this proceeding is prosecuted.

It is first urged that the action of the court in appointing the receiver without notice, without evidence and upon a petition verified only on information and belief, was erroneous. The petition failed to state facts sufficient to show that the delay which would result in giving notice of the application to the adverse party would defeat petitioners' right or result in injury, and under such circumstances it was error for the court to appoint a receiver without notice. Pyeatt v. Prudential Ins. Co. et al., 38 Okla. 15, 131 Pac. 914, Ann. Cas. 1915C, 894.

Plaintiffs in error, however, are not in position to urge this objection, because after the appointment was made they filed motion and amended motion to vacate the appointment, and also filed answer to the merits and offered evidence in support of the issues made upon the amended motion to vacate, and thereby entered a general appearance in the action and tried out the issues on their merits. The petition was properly verified at the time of the hearing on the amended motion to vacate. The situation here presented is similar to that where a party against whom a decree had been rendered without service of process files a motion to vacate the same upon nonjurisdictional as well as jurisdictional grounds, where it is held that the party enters a general appearance, and that the court ac-

quires jurisdiction to make an order overruling said motion to vacate. Chicago, R. I. & P. R. Co. v. Austin, 63 Okla. 169, 163 Pac. 517, L. R. A. 1917D, 666, and cases cited.

The precise question here involved has not heretofore been considered by the court, but a similar situation was presented in Elwood v. National Bank, 41 Kan. 475, 21 Pac. 673, where it was said that such question was material, as the entire question with regard to the necessity or want of necessity for a receiver, or the propriety or impropriety in having one, had been heard, and both sides had enjoyed an ample opportunity of presenting all that they desired to present.

This then requires an examination of the evidence to determine whether the receiver was rightfully appointed. It was the claim of plaintiff that the property of the corporation was being mismanaged and in danger of being lost to the stockholders through the mismanagement and fraud of its officers. The principal officer of the corporation was at Tulsa, which is the center of the oil region and one of the largest financial centers of the state, and there is evidence tending to show that A. T. Brown, president of the company, who had formerly been a partner with M. C. Fleming, president of the Union State Bank at Shawnee, arranged with said Fleming for a loan of $4,000 payable in 15 days, which was represented by two separate promissory notes, especially prepared, bearing date of December 4th, in which all of the property of the corporation was pledged as collateral for the payment thereof, and which authorized a sale of the property so pledged, either at public or private sale, with or without notice; that to secure the payment of these notes there was also assigned an oil lease, together with all the oil which might be produced therefrom, and on December 6th a chattel mortgage on all of the personal property of the company was executed. There appears in the record a schedule of the equipment, which amounts to $29,452.77. The lease which was assigned is shown to have had a probable value of $30,000 or $40,000 at the time of the assignment, and the amount of oil produced therefrom which had been assigned to the bank amounted to about $2,000 per month. The notes were not to bear interest until after maturity. During December and January over $3,000, the proceeds of oil sold from the lease, was deposited in the bank, which was not applied to the payment of said notes, but the bank permitted same to be paid out by defendants upon claims against the company, a large proportion of which was in favor of said defendants for salaries and expenses. On January 20, 1916, Brown,

the president of said company, went to Shawnee and held a consultation with Fleming and his attorney, and on the next day, January 21st, Fleming, as president of the bank without any notice whatever, sold to the bank all of the company property for $500, and on January 27th, acting for the bank, executed to himself a written assignment of the lease together with all the wells, lease equipment, rights and privileges in connection with said lease and contracts for the sale of oil therefrom. On January 23d, which was on Sunday, notice of sale of the property covered by the mortgage and the assignment of the oil runs were posted, bearing date as of January 20, 1916, and on February 4th a sale of all the lease equipment and outfit to satisfy the mortgage was made for the sum of $1,750 by the bank through Fleming as its president, to himself as trustee for his wife, himself, and other individuals, who thereafter organized the Security Investment Company, to whom was conveyed the property purchased by Fleming. There was no one present at this sale, and no one bid thereat except employes of the bank. The Oil Well Supply Company had a claim against the Arkansas River Bed Oil & Gas Company secured by a mortgage on certain property which was prior in time to that held by the bank, and about the 7th of February, 1916. Fleming proposed to its manager that the company foreclose its mortgage and that he could sell the property of the company for $60,000 or $70,000, and would split the profits between him and one Hill, who was manager for the Oil Well Supply Company. There is additional evidence tending to show, and from which the court would be justified in finding, that Brown as president of the company and the other individual defendants as officers thereof were acting in collusion with Fleming in disposing of the property of the corporation at a grossly inadequate price, and that as a result thereof the property would be lost to the stockholders of the company. And there is evidence tending to show that the revenues of the company were sufficient to pay its ordinary running expenses, and that its receipts were consumed by the officers in the allowance of excessive claims. A court of equity has the inherent power to appoint a receiver for the property of a corporation, and to require the officers to make an accounting therefore upon the petition of minority stockholders. The officers of a corporation in the management and control of its assets are the trustees of the stockholders, and are charged with the faithful management of the corporate property for the accomplishment of the purposes for

which the corporation was chartered; and, under a state of circumstances such as the evidence tends to establish, it would amount to a denial of justice if courts of equity were unable to afford a remedy where no adequate remedy could be had at law. If the foregoing facts are established upon final trial, there will be shown a gross mismanagement of the affairs of the corporation, which has resulted in wrecking its business and wresting from the stockholders its property, and the court was justified in reaching out its arm and taking charge of the property and placing it in the hands of a receiver until these matters could be investigated upon final trial and the rights of the minority stockholders could be determined and an accounting had. Exchange Bank of Wewoka et al. v. Bailey, 29 Okla. 246. 116 Pac. 812, 39 L. R. A. (N. S.) 1032.

It follows that the court committed no error in refusing to vacate the order appointing a receiver, and the decree appealed from is affirmed.

All the Justices concur, except RAINEY, J., absent.