## GROHOMA GROWERS ASS'N et al. v. TOMLINSON et al.

No. 27437. Jan. 18, 1938.

Robert Burns and Everest, McKenzie & Gibbens, for plaintiffs in error.

Roddie & Beckett, for defendants in error.

CORN, J. This presents an appeal from an order of the district court of Oklahoma county refusing to vacate the appointment of a receiver and approving receiver's report. The plaintiffs in error were defendants below and the defendants in error were plaintiffs, and will hereafter be referred to as in the trial court.

March 15, 1930, Fred Groff, R. D. Rumsey, and C. V. Stuart entered into a declaration of trust which was recorded July 18, 1930. By the terms of this agreement the parties formed the Grohoma Growers Association, with themselves as trustees, for the expressed purpose of dealing in a certain grain known as "Grohoma," which had first been produced by Groff.

Briefly, the plan of operation was as follows: The association sold seed to anyone desiring to plant it. The purchaser could then enter an agreement under contract with the association whereby, for each acre of land planted to the seed, one unit certificate was issued to him. By the terms of this contract all seed produced was to be turned over to the association and marketed by it for the benefit of the unit holders, according to the unit interest they held in the whole.

The product was new and unknown, and it was necessary to conduct an extensive selling campaign. Sales fell short of expectations and the trustees realized they had more seed on hand than could be sold. For this reason a resolution was purported to have been adopted whereby unit holders could withdraw grain from the association, in proportion to what they had put in.

Being dissatisfied with the arrangement, and having knowledge of certain other circumstances relative to the way in which affairs of the association were being handled by the trustees, the plaintiffs, on April 24, 1931, filed their petition alleging that Stuart and Rumsey, a majority of the trustees, were mismanaging the trust estate, dissipating the proceeds, and incurring indebtedness in the name of the association to such an extent that the entire business was in great danger of being lost; that the trustees in charge refused to account or to allow Groff, the other trustee, to have access to the records to investigate conditions of the association, and praying for the immediate appointment of a receiver. April 24, 1931, the district court ordered the appointment of E. R. Bradfield, and ordered him to take over the control and management of the association.

May 21, 1931, the defendants answered, denying the allegations and alleging that the association had assets which would far exceed all indebtedness. At the same time the defendants filed a motion to vacate the receiver's appointment.

The receiver made application and was ordered to take charge of certain seed in Arkansas which Stuart alleged to have been his own, and also of two trucks standing in his wife's name, but which it was alleged he had purchased with the association's assets. Also, the receiver set up that large

quantities of seed had been shipped into Illinois and Tennessee and the parties holding the same refused to recognize the receiver. The court ordered him to take possession of such property and seed and to advance funds of the association as attorney's fees for handling these matters.

At this point the defendant Giblet intervened, pleading that he had loaned the association $5,000, and that the association had assigned him a portion of the proceeds from the sale of seed shipped out of the state on consignment contracts. Under this arrangement only $750 had been paid upon these two notes, which were guaranteed by Stuart and Rumsey.

The defendants' motion to vacate appointment of the receiver had not been heard when the court granted the receiver's application to proceed to Texas to bring suit there for recovery of seed alleged to belong to the association. This was done. the action being filed in the name of the plaintiffs, rather than in the receiver's name, and all expenses were paid out of the association's funds.

On December 7, 1931, the court ordered the removal of Bradfield and the appointment of H. G. Provines as receiver, and on April 13, 1932, the court appointed a referee, to hear evidence and examine into the entire matter, and to report his findings to the court. Pursuant to such order the first hearing was held July 28, 1932, after which the referee made certain findings. However, no record of the testimony at this hearing was taken. The cause was continued from time to time until August 16, 1932, at which time objections to his report came on for hearing.

May 8, 1934, the referee filed his second amended report and a day was set for hearing defendants' motion to confirm same. The matter was heard, and upon objections to the report, filed by R. E. Tomlinson, one of the plaintiffs, the trial court ordered a rehearing of the matter. This was begun September 21, 1934, and at this hearing a record was made. September 12, 1935, the referee filed findings of fact and conclusions of law, to which the defendants and Bradfield excepted, and on May 11, 1936, a journal entry of judgment was entered in the district court of Oklahoma county sustaining all findings except those numbered 11, 12, 13, and conclusions of law No. 3, to which the court sustained Bradfield's objection; overruled other objections to the referee's report, approved the finding that appointment of the receiver was proper, and ordered

that there be judgment against the defendants for costs.

From this judgment the defendants appeal, setting up seven propositions upon which they base their claim for reversal of the trial court's judgment sustaining the referee's report. To facilitate the presenting of this opinion and because of the great amount of closely related circumstances upon which the argument rests, these propositions will be combined and condensed wherever feasible.

The first proposition contended for by the defendants is that the judgment and decree of the trial court confirming the referee's report is erroneous and void, in that no action was pending between the plaintiffs and defendants and the petition for appointment did not seek any primary relief or final judgment between the parties; therefore, the court being without jurisdiction to appoint a receiver, all acts and proceedings of the receiver were therefore void.

This proposition is based upon the claims that the petition did not allege insolvency of the association, and that there was no adequate remedy at law; that the relief asked was insufficient to entitle plaintiffs to a receiver, and that the existing circumstances did not amount to an extreme emergency so that a receiver could be appointed without notice.

While true that insolvency was not alleged, this is reasonably explained in that Stuart and Rumsey, a majority of the trustees, effectively managed to prevent their cotrustee and the stockholders from knowing the true conditions of the business. Nor is particular attention to be paid to the argument that there was no allegation of a lack of an adequate remedy at law. The two trustees who so willingly managed the entire affairs of the association apparently concealed the affairs so that the plaintiffs could not know the real state of things. In truth, they were kept so much in the dark that they could scarcely be expected to know what kind of an action to bring or what relief to ask for.

Under this same proposition the defendants contend that the circumstances here did not indicate an extreme emergency such as would warrant the appointment of a receiver without notice. It is argued that the action of the court in appointing a receiver without notice upon a petition verified only upon information and belief was erroneous, and supporting this contention defendants cite Pyeatt v. Prudential Ins. Co., 38 Okla. 15,

131 P. 914, holding that to allow appointment in such manner there must be a showing of extreme emergency.

The managing officers in control of the assets of the association were the trustees of the stockholders, charged with a high degree of faithfulness in the management of the assets for the accomplishment of the purposes for which the association was organized. Here two of the trustees had active control and management of the entire business. They sold seed to whom they pleased, withdrew seed from the warehouse for themselves when other stockholders could not get any seed, and incurred debts in the name of the association when they desired, and then put the others off with promises of a forthcoming report on the financial condition which they never completed.

Under circumstances such as the evidence tends to establish, it would amount to a denial of justice if a court of equity were unable to furnish these plaintiffs relief in this case. The record has been carefully considered, and there is abundant evidence of gross mismanagement, justifying the appointment of a receiver upon the petition of the plaintiffs. The evidence being entirely sufficient to justify the appointment, the court properly took jurisdiction of the matter, and his appointment being proper obviates the claim that his acts were void. See Exchange Bank of Wewoka v. Bailey, 29 Okla. 246, 116 P. 812; Union State Bank of Shawnee v. Mueller. 68 Okla. 152. 172 P. 650; and White v. Tullahassee Realty Co., 82 Okla. 75, 198 P. 584.

It is an established rule that, generally, equity will exercise its inherent powers to prevent diversion of funds and protect rights of members of an association, and to that end will compel delivery of property or the placing of it in the custody of a receiver, or order sale of the property if the interests of justice so require and sufficient cause is shown, in order to prevent abuse of the rights of the members. The flexible rules of equity apply in all such cases and the courts of equity are always open to those wronged by the acts of mismanagement of the officers. This rule may be applied with the greatest propriety to the instant case.

The second proposition is that, the receiver's appointment being void, all his acts were void, and after the filing of a motion to vacate the appointment by the defendants, the receiver became a trespasser and he and the plaintiffs then became liable to the defendants for any expenses in excess of what might have ordinarily been incurred, and that the trial court erred in sustaining the referee's report that the receiver had properly accounted for everything administered by him.

The record reflects that the receiver had satisfactorily accounted for everything received and administered by him, and at the hearing the receiver satisfactorily explained the alleged discrepancies in his report.

Briefly, the argument in the third proposition is directed toward showing that the order appointing the receiver was void for the reason that the trust estate was in the trustees' hands under an agreement defining their powers, and in the petition the plaintiffs sought no definite judgment against the estate or the trustees, this being based upon the claim that no grounds for receivership existed, and it was not shown there was no adequate remedy at law.

This has largely been dealt with under proposition 1, but it is to be noted that the petition alleged and the evidence showed that the trustees had placed assets of the association beyond the control of the association, and, too, the plaintiffs were unable to secure a statement of the condition of the association from the managing trustees. The stockholders were interested primarily in protecting their interests, and under the conditions shown to have existed they were justified in seeking the appointment of a receiver solely for the purpose of protecting their interests. Mismanagement and the evident danger of losing everything unless something was done at once justified the plaintiffs in asking a court of equity to appoint a receiver.

The rule announced by this court in the past is that where a business is being mismanaged or is in danger of being lost to the stockholders through mismanagement, collusion, or fraud of the managing officers, a court of equity has inherent power to appoint a receiver to take charge of its affairs, and the better view seems to be that equity has the inherent power to place the affairs of a corporation or trust estate in the hands of a receiver when the officers are guilty of fraud or neglect. This is a sound, well-established rule, and it would be unjust in the extreme to hold that it is to be inoperative in the event that in an ordinarily proper case for appointment of a receiver there is a failure to ask for a judgment over against the wrongdoers, or some like remedy. See Oklahoma Sheep & Cattle Co. v. Hastings, 80 Okla. 109. 194 P. 223, and Union State Bank v. Mueller, supra.

The next grounds urged for reversal are

the claims that it was the duty of the referee and trial court to determine the amount of seed sent out of the state on the two contracts mentioned, and to have fixed the amount and value of the same, failure to do so being prejudicial to the association and Giblet (intervener), and further, that the court and referee had a duty to determine the amount of grain taken over by the receiver and the value, notwithstanding that the receivership was unlawful.

The evidence tended to show that the very best arrangements possible, concerning the seed shipped out of the state, were made. The contract had in effect failed, as much by reason of the defendants' acts as from any other cause, since it was their actions which put the association in an insecure position. Furthermore, the demand for the seed on consignment (a portion of the proceeds of which had been assigned to Giblet) had failed, the seed had become damaged to some extent, and there was a probability of complete loss unless the receiver handled the matters and disposed of this seed. The real value of this seed was very difficult to ascertain, except for the ability to state that it would vary between the full contract price and practically no value at all by reason of damage or failure of demand. Further, it must be considered that the parties handling the grain refused to recognize the receiver, and added in this way to the possibility of complete loss.

The receiver was called upon to explain and prove his report of what he had administered, and the evidence which he gave concerning what he took charge of and how and where the same was disposed of was not controverted by the defendants. It having been determined that the appointment of the receiver was not wrongful and void, it necessarily follows that the failure to absolutely fix the amount and value of the property taken under his control was not fatal, there being no necessity of a determination of this with the view in mind of establishing the extent of the receiver's liability.

The defendants also submit the proposition that the referee's last report of findings of fact and conclusions of law, and the decree of the trial court confirming the same, should be set aside because of a gross misconduct on the part of the plaintiffs and their attorneys. This claim is based in part upon the fact that one John Dillon was named as a party plaintiff without his knowledge, to which state of facts he made affidavit and was released from participation by order of the court. Although it does not appear exactly how he came to be named as one of the plaintiffs in the petition, there is no evidence that there was any ulterior motive in his being named and certainly no injuries resulted to anyone by reason of its being done.

The point is also made that there was misconduct on the part of the plaintiffs' attorneys in accepting a retainer from Giblet to collect the debt the association owed him. While such acts are not to be considered as most conducive to sound practice, it can scarcely be said that this constituted such professional misconduct as to justify the decree of the trial court being set aside.

The defendants also complain because the suit which the trial court ordered the receiver to file in Texas for the recovery of seed there was filed in the name of the original plaintiffs, rather than in the name of the receiver, as the court directed. The suit in question was not pressed to final judgment, but was dismissed after being filed. Although the court ordered that it be filed in his own name, expediency may have dictated that the proceeding be in the names of the plaintiffs, and unless the trial court determined this to be an abuse of the authority given the receiver, it is not to be considered as ground for reversal on appeal.

The defendants also complain that even had the petition for receivership stated a cause of action, there was error in overruling the demurrer to the plaintiffs' evidence. Having already passed upon the question of whether the petition stated a cause of action, and having determined that the evidence amply sustained the allegations contained therein, we hold that the referee and trial court committed no error in overruling said demurrer.

The question is also raised as to employment of attorneys by the receiver, the attorneys also representing the plaintiffs in their action, that their employment was void and that the receiver is not entitled to credit for the money paid to them. There is no evidence of connivance or that any harm resulted therefrom.

There being no reversible error, the judgment of the trial court is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and PHELPS and HURST, JJ., concur.