GUARANTY LAUNDRY CO. et al.
v. PULLIAM et al.

No. 33007. Feb. 3, 1948.

Rehearing Denied April 6, 1948.

*191 P. 2d 975.*

John H. Cantrell and Cantrell, Carey & McCloud, all of Oklahoma City, for plaintiffs in error.

Suits & Fellers, Fred E. Suits, and James D. Fellers, all of Oklahoma City, for defendants in error.

CORN, J. This is an appeal by plaintiff in error, individually, and as president in behalf of the Guaranty Laundry Company, a corporation, from an order of the trial court denying the motion to vacate the appointment of a receiver. Defendant in error, secretary and assistant manager, filed the cross-appeal from an order granting a permanent injunction restraining her from interfering with plaintiff in various ways.

Guaranty Laundry Company, hereinafter referred to as the Company, was organized July 1, 1933, by Willis G. Sautbine, O. A. Hunt (father of Evelyn Pulliam), Carl B. Short and A. D. Brazelton. Evelyn Pulliam, defendant herein, was employed as bookkeeper and cashier at the time of organization and continued in this capacity until she became an officer and stockholder in 1945.

During the early years the company encountered some financial difficulties. In an effort to increase the business the officers of the company, in January, 1940, voted to allow each officer a cash discount of 30% for all laundry brought in to the plant. In October, 1940, the officers voted to increase this discount to 40%. In October, 1943, plaintiff was elected manager of the company and defendant was elected secretary-treasurer. Plaintiff began to devote part of his time to active management of the business. Defendant attended all business meetings, and was familiar with the organization and activities of the company.

In December, 1943, Brazelton withdrew from the company and Mr. C. D. Sautbine was elected a director, although the record is silent as to the manner of acquisition of his one share of stock. In May, 1944, defendant was elected assistant manager to relieve plaintiff of some of his duties and to give him more time to care for his personal affairs.

September 7, 1945, defendant bought 25 shares of the capital stock from Short, who withdrew from the business, he having been replaced as manager by the plaintiff in 1943. Through the period of disagreement and dissension and at the time the present action was brought, the company stock was divided as follows:

| | |
|---|---|
| Willis G. Sautbine | 49 shares, |
| C. D. Sautbine, | 1 share , |
| Evelyn Pulliam, | 37 shares, |
| O. A. Hunt | 13 shares. |

Defendant prepared the transfer on the company records of the stock she had acquired, but plaintiff refused to effect the transfer. In February, 1946, defendant filed an action in the district court of Oklahoma county to compel plaintiff, as president, to sign the stock transfer in his official capacity and issue to defendant a certificate evidencing her ownership of such stock.

Plaintiff defended that action upon the ground that this defendant stood in a fiduciary capacity to the stockholders, and had purchased this stock in disregard of such obligation, and in abrogation of a company rule that stock offered for sale should be purchased only on behalf of the remaining stockholders.

The action resulted in a judgment for the defendant, directing that the stock be transferred into her name upon the corporate books. See Guaranty Laundry Co. et al. v. Pulliam, 198 Okla. 667, 181 P. 2d 1007.

Because of the equal division in ownership, neither side having a majority, the management and active operation of the plant reached a complete impasse; the plaintiff managing and directing as he saw fit and the defendant blocking or counteracting his efforts by her refusal to sign plaintiff's salary and commission checks. From and after about August, 1946, plaintiff refused to hold a meeting of the board of directors as required by the company's by-laws, for the express reason that no good could result to the company from such meetings; this despite the continued efforts of other stockholders to have directors' meetings called.

Plaintiff, in his petition, alleged three causes of action: (1) to recover $401.53 salary and commissions; (2) for an injunction against defendants; (3) for appointment of a receiver to take over the assets of the corporation. Plaintiff also sought a temporary injunction against defendant, and on July 29, 1946, the trial court, without hearing testi-

mony, entered a temporary injunction, restraining defendant from interfering with plaintiff in his conduct of the business.

Separate answers and cross-petitions were filed by both the company and defendant. Numerous motions and amended pleadings were filed by the parties. On November 27, 1946, defendant filed application for appointment of a receiver, whereupon plaintiff immediately dismissed his third cause of action. Defendant also sought to vacate the temporary injunction. Counsel was appointed by the court to represent the company.

After hearing all of the evidence, the trial court made the following statement, before entering final judgment:

"The Court: This much has been firmly established in the case and that is that conditions have arisen in this corporation among its stockholders and directors which has rendered it impossible for this corporation and its officers to officiate under its officers. The trouble that has arisen, as I see it, is between an individual on one side and a corporation on the other. One of the officers of this corporation has undertaken, by reason of his position, to control the operation of the corporation solely for his benefit. As I have listened to this testimony, I have been impressed with this situation and that is, that everything that Mr. Sautbine has done, in relation to his conduct, as Manager of this corporation, has been done solely and alone for Willis Sautbine. On the other hand, everything that's been done by the other members of the stockholders and board of directors has been done solely and alone for the benefit of the corporation. The contention which has arisen has amounted, in my mind, to a distinct mismanagement of the affairs of the corporation. It's true that the corporation is now solvent, it's a going concern and as a matter of fact, up until now, at least, has been doing a good business, a profitable business but nothing has been brought to the attention of the court to make me determine differently than that, that cannot continue under the present management. It certainly can't be a profitable business under present conditions and I think a receiver should be appointed for the benefit of this corporation."

All the matters presented in this appeal can be encompassed by consideration of the following questions: (1) Did a court of equity have the jurisdiction and authority to appoint a receiver in this case? (2) Was the evidence such as to require appointment of a receiver, or did the trial court err in refusing to vacate the order of appointment? (3) Does a court of equity, in this jurisdiction, have the authority to appoint a receiver looking toward dissolution (of a solvent corporation) in a case such as presented herein?

Statutory authority for appointment of a receiver is found in 12 O. S. 1941 §1551, et seq. No particular subdivision of section 1551, supra, expressly encompasses this particular situation. However, the sixth subdivision of the section provides as follows:

"Sixth. In all other cases where receivers have heretofore been appointed by the usages of the courts of equity."

We have pointed out innumerable times that under this subdivision the appointment of a receiver rests within the sound discretion of the trial court, and when based upon sufficient evidence, and when it is not determined from the record that there was an abuse of discretion, an order appointing a receiver will not be disturbed. Galer Oil Co. v. Pryor, 182 Okla. 376, 78 P. 2d 281; Stovall et ux. v. Edwards, 194 Okla. 335, 151 P. 2d 385.

In 45 Am. Jur., Receivers, §49, it is pointed out that the modern tendency, due to the increase of corporations and the realization of the inadequacy, in certain circumstances, of remedies which would ordinarily be adequate with respect to individuals, has been toward liberality in appointment of receivers. Therein the following statement is found:

" . . . It has been said that while the growth of the practice of forming corporations has largely augmented the number of cases in which the appointment of a receiver is sought over corporate affairs, and while some courts have gone to an extreme in asserting the power of a court of equity over the management and affairs of corporations, the tendency has been to return to the safe and settled principles established in the past, and to refuse to interfere by such appointment unless absolutely necessary to do complete justice. In various cases the courts have pointed out the reluctance with which such drastic relief as the appointment of a receiver is granted, and the broad rule has been laid down that the appointment of a receiver for a solvent corporation is a duty which should not be performed unless, after a careful examination of all the facts in the case, the court is convinced that under the circumstances it is an absolute necessity, and that irreparable injury will result from refusal to do so. In other words, the appointment of a receiver for a solvent, going corporation is a last resort remedy, and should not be employed when other adequate remedy is available. . . ." See annotations in 61 A.L.R. 1213; 91 A.L.R. 665; and Inscho v. Mid-Continent Development Co., 94 Kan. 370, 146 P. 1014, Ann. Cas. 1917B, 546.

Examination of both texts and authorities provides foundation for the statement that, as a general rule, equity has the power to order a receivership upon application of a stockholder where it is absolutely necessary. 45 Am. Jur., Receivers, §18 et seq.; Pomeroy's Eq. Jur. (4th Ed) §1545; Geiman-Herthel Furniture Co. v. Geiman, 160 Kan. 346, 161 P. 2d 504; cited by defendant. The following cases declare the inherent power of a court of equity to appoint a receiver to preserve the property for stockholders. Riverside Oil & Refg. Co. et al. v. Lynch, 114 Okla. 198, 243 P. 967; Ellis, Trustee, v. Panther Oil & Gas Co., 171 Okla. 552, 43 P. 2d 423; Anglo-American Royalties Corp. v. Brentnall, 167 Okla. 305, 29 P. 2d 120; Boynton Gas & Elec. Co. et al. v.

Mosier, Adm'x, 179 Okla. 232, 65 P. 2d 448.

Plaintiff contends that the appointment of a receiver was improper because made upon application of defendant, who had no capacity to seek such relief. Plaintiff says the trial court entered judgment denying him any relief and, while granting a permanent injunction against defendant, appointed a receiver as the ultimate end to be reached by her application, and urges that this was in excess of the trial court's power, because a court of equity cannot appoint a receiver where the appointment is not a remedy auxiliary to some primary relief which is sought and which equity appropriately may grant.

Essentially this same contention was made in Schofield et al. v. Melton, Judge, 166 Okla. 64, 25 P. 2d 279, wherein it was contended that receivership is an ancillary remedy, and that the petition was required to contain a specific request for other relief than for appointment of a receiver. Therein the court, at page 66, said:

"The contention of the respondent is answered by the language of the federal court in the case of the Superior Oil Corp. v. Matlock, 47 Fed. (2d) 993 (a case arising in Oklahoma), where in the body of the opinion the following language appears:

" 'It is urged that a receivership is not an independent remedy, but is purely ancillary to other relief sought. This is sound law (Citing many cases). It is claimed that the prayer of the state court petition is only for a receiver. But in Oklahoma the prayer of the petition does not determine the relief to which a party may be entitled, nor the measure of relief to be applied.' Owens v. Purdy, 90 Okla. 257, 217 P. 425, 429; Myler v. Fidelity Mutual Life Ins. Co., 64 Okla. 293, 167 P. 601. However, the prayer of the petition in the state court is not limited to the appointment of a receiver. The primary prayer is that the court administer the properties of the corporation, and 'enforce and ad-

just the rights, liens and equities of all creditors and stockholders.' . . . This contention of appellees is therefore untenable."

Plaintiff also contends that a stockholder who has acquiesced, or participated in, any acts complained of, waives objections thereto and cannot maintain an action in a personal capacity for relief. Citing 13 Am. Jur., Corporations, §469.

Plaintiff points out that defendant participated in the authorization and ratification of many of plaintiff's acts, with full knowledge of the circumstances. While this is true with respect to some matters, such as voting to participate in a bonus arrangement for the company officers, and in the matter of salary raises for the various officers, it must be noted that certain other matters which persistently caused trouble, and to which defendant did not agree, arose when plaintiff, purporting to act in his official capacity, directed that a certain course be followed and defendant saw fit to attempt to counteract such course of action as being detrimental to the best interests of the company. Likewise, defendant acted in this manner only after becoming a major stockholder in the company, having had no voice in the control of the company prior to that time.

Equity has jurisdiction over corporations through a stockholder's action to restrain or enjoin the doing of acts which might lessen the value of the stockholder's interest, if the acts complained of amount to a breach of trust.

In 13 Am. Jur., Corporations, §451, is found the following:

" . . . It may be said that courts of equity are prompt to redress the injuries of minority stockholders against the wrongdoing of those in control of the corporation after the former have sought relief through the corporation without success. . . ."

It is unnecessary, however, to apply to the directors of a corporation for correction of a wrong if the circumstances, as in the present case, are such that the request would be futile. Application of this rule is found in Exchange Bank v. Bailey, 29 Okla. 246, 116 P. 812, 39 L.R.A. (N.S.) 1032. Repeated demands upon plaintiff to call director's meetings, for the purpose of considering matters essential to advantageous operation of the company, and in an effort to work out or compromise causes of dissension and difficulty were rebuffed by plaintiff's declarations that meetings were unnecessary; or by a purported offer to agree to a meeting of the board of directors only if defendant would " . . . agree with us in advance that no controversial matters will come up for action, . . . " This one example is sufficiently illustrative of plaintiff's conduct in his official capacity.

In 45 Am. Jur., Receivers, §14, this rule is announced:

"The qualification to call into action the power of a court of equity to appoint a receiver in a proper case generally exists in a stockholder in a corporation, but as a rule recourse must be made to the directors of the corporation and prove fruitless before a stockholder is entitled to such relief. . . ."

It is suggested by plaintiff that defendant could not maintain this action except in the nature of a derivative stockholder's suit in behalf of the company. Hence, plaintiff argues that if the corporation itself could not recover, because all of plaintiff's acts had been authorized, obviously the defendant could not maintain this action in her own behalf.

Although not a minority stockholder in the strict sense of the term, we are of the opinion defendant was a proper party to seek relief in a court of equity, in order to protect herself and others standing in the same position, from the acts of plaintiff as president and manager of the company and so able to control the actions of the board of directors.

This argument made by plaintiff to the effect that defendant came into a court of equity with unclean hands, and that she was in contempt of court and for these reasons was not entitled to any relief, is not persuasive in the face of this record. The trial court found that everything defendant did, or attempted to do, was for the best interests of the company, and done in an obvious effort to protect the company from the effect of the arbitrary manner in which plaintiff exercised his authority.

We must consider whether the evidence was sufficient to require appointment of a receiver upon the grounds of mismanagement, or whether the trial court erred in refusing to vacate the order of appointment.

The right to have a receiver appointed is recognized in this jurisdiction as a matter resting within the sound judicial discretion of the trial court, whose judgment is not to be disturbed on appeal unless an abuse of such discretion is shown. Stovall et ux. v. Edwards, 194 Okla. 335, 151 P. 2d 385; Wood et al. v. Wood et al., 195 Okla. 184, 156 P. 2d 136.

The dissension between the two groups of stockholders, equally divided in voting strength, is evident from the record and is admitted by both parties. Because of this condition the board of directors cannot function properly, and the business affairs of the company necessarily suffer by reason of the existing turmoil and uncertainty which is known both to the employees and the general public.

It is plaintiff's position that the trial court erred in finding that plaintiff mismanaged the company, upon the basis that the majority of the stockholders must control and their discretion on matters inter vires is conclusive and not subject to question or control by the minority. Citing 6 Thompson, Corporations (Red Ed.) 368 et seq.

Upon this ground plaintiff insists that mismanagement could not be found, since the stockholders concurred and ratified every action taken by plaintiff.

In considering the necessity for, or the propriety of, the trial court's appointment of a receiver, we are not confined to those isolated acts upon which plaintiff relies because approved by the other stockholders, as determinative of the question of mismanagement. Rather, we are compelled to consider the entire record setting out the various transactions; and plaintiff's entire course of conduct in the handling of the company's affairs, as well as his private business as related to that of the company; and we may draw all reasonable inferences from the evidence as indicative of the kind of management plaintiff exerted and the motives thereof. When this is done it is apparent that the trial court could not have found otherwise upon this question. The record is replete with evidence of instances where plaintiff used his official capacity to further his own private interests, in opposition to the interests of the company.

The question of dissension between two groups of stockholders of equal voting strength, or of a deadlock in a board of directors and resultant mismanagement, as providing grounds for appointment of a receiver for a solvent corporation does not seem to have been presented directly to this court heretofore. We do find numerous instances where the matter has been considered by other appellate courts. In such cases it has been held that where the board of directors is deadlocked so that there is a failure of the board to function in behalf of the corporation, or there is internal dissension to the extent the board of directors cannot function and the business can no longer be conducted advantageously, such facts are sufficient to invoke the action of a court of equity. Bowen et al. v. Bowen-Romer Flour Mills Corp. et al. (Kan.) 217 P.

301; Jordan v. Austin Securities Co. et al. (Kan.) 51 P. 2d 38; Boyle, et al. v. Superior Ct., etc., (Cal.) 170 P. 1140; Koshaba v. Koshaba (Cal.) 132 P. 2d 854; Merlino et ux. v. Fresno Macaroni Mfg. Co. et al. (Cal.) 148 P. 2d 884; McDougal v. Huntington, etc., R. R. & Coal Co., 294 Pa. 108, 143 A. 574; Gillies v. Pappas Bros. & Gillies Co., 138 N. J. Eq. 202, 47 A. 2d 424; Application of Jack Martin Auto Sales, 63 N. Y. S. 2d 686, Hlawati v. Maede-Hlawati Co., 289 Pa. 233, 137 A. 235.

There is no question but that the management of the company is hopelessly deadlocked. Both parties are in agreement on this. The dissension between the two groups of stockholders is such that directors' meetings are not called, and the board could not function if meetings were held, by reason of the equal division in voting strength. It is clear that the governing body is in such condition that it is presently impossible for the company to carry on its business advantageously to the stockholders. Although now a solvent concern, this situation cannot long prevail in the face of internal troubles known to the public, and seriously affecting the company affairs as well as the public exploitation. The statement of the Kansas court in Bowen-Romer Flour Mills Corporation case, supra, is applicable here. Therein the court said:

"Courts of equity came into existence for the purpose of affording such relief as justice and good conscience required, under the peculiar circumstances of the case. In some jurisdictions, instead of keeping up with social progress, equity has set and hardened. Its potency to meet new conditions has been emasculated, and frequently the caution to be displayed and the limitations to be observed in appointing receivers loom so large that as the Missouri court has observed, judicial hesitancy degenerates into judicial atrophy. Cantwell v. Columbia, etc., Co., 199 Mo. 1, 97 S. W. 167. In other jurisdictions a better view is taken, and the phrase, 'by the usages of courts of equity', means according to the informing spirit of equity heretofore

manifested in the appointment of receivers."

The evidence was sufficient to establish that the affairs of the company were mismanaged, as a result of the dissension among the directors and the resulting deadlock because of the equally divided voting strength. The circumstances justified appointment of the receiver, and the trial court did not err in refusing to vacate the order of appointment.

The last matter to be considered is whether a court of equity in this jurisdiction has authority to appoint a receiver looking toward a dissolution of a solvent corporation. Under our former statutes governing corporations (18 O. S. 1941 §1 et seq.), the methods for dissolution of corporations are set forth. Sections 152-153 provide the methods and conditions under which a court may dissolve a corporation. The methods therein provided are not sufficiently broad to encompass the present situation.

The prevailing rule is that a court of equity is without jurisdiction, in absence of statutory authority, to decree dissolution of a corporation at the suit of a stockholder, or even the state. 13 Am. Jur., Corporations, §1322. Also see §1295. This rule has been noted by our court in the early case of Exchange Bank et al. v. Bailey, 29 Okla. 246, 116 P. 812, 39 L.R.A. (N.S.) 1032. However, the court pointed out therein (Quoting Pomeroy's Eq. Jur. §119) a few exceptions have been admitted to the rule.

In 13 Am. Jur., Corporations, §§1323-1324, the following statements are found:

"A number of authorities support the rule that a court of equity will not, at the instance of a stockholder and in the absence of an express statute, dissolve or wind up the affairs of a good corporation on the ground of mismanagement, fraud, or dissensions. The rule supported by other authorities is, however, that a court of equity has

inherent jurisdiction, at the instance of stockholders, to wind up the affairs of a going, solvent corporation on the ground of gross mismanagement, fraud, or dissension among the stockholders, officers, or directors where a clear case of right is shown for which there is no other adequate relief.

"A court of equity has jurisdiction of a proceeding for the dissolution of a corporation and the distribution of its assets if it is insolvent or if continued operation will result in inevitable ruin. . . ."

Supporting the rule that equity may act to dissolve a corporation where there are dissensions among the stockholders, officers or directors, where a clear case is shown for which there is no other adequate relief, are cases from the Supreme Court of the United States, Michigan, Minnesota, Mississippi, Washington, and Kansas.

In Kansas case of Bowen v. Bowen-Romer Flour Mills Corp., supra, this language is found:

" . . . Because of dissensions between the two groups of stockholders, the vacancy in the board of directors cannot be filled. Because of dissensions in the board of directors, it cannot function, and the corporation does not have a managing body such as the law requires. The directors representing one group were in possession of the corporate property and in control of the corporate business, and were taking advantage of the opportunity to oppress the members of the other group. Held, the district court properly appointed a receiver for the corporation, and if it shall be found impossible for the corporation to achieve its purposes through its own proper agencies, the court may wind up its business and distribute its assets."

Defendant contends on appeal that the evidence was not sufficient upon which to grant a permanent injunction against her. In view of our holding with respect to appointment of a receiver, and the fact that the company hereafter will be represented by a receiver until a new management is installed or the corporation is dissolved, it is unnecessary for us to consider the propriety of the trial court's ruling upon this issue.

The matters urged by plaintiff in seeking reversal of this judgment are not sustained. The trial court had jurisdiction and authority to appoint a receiver. The evidence upon which the application was based was sufficient to justify the appointment, and the trial court properly overruled the application to vacate such appointment.

The judgment appointing the receiver is affirmed. It is the further order of this court that the receiver appointed (but whose appointment was suspended by plaintiff on appeal) again take charge of and operate said corporation for such period as the trial court may fix, within which the parties may adjust their differences, if possible. If, at the end of such period they have not composed their differences, the receiver, under proper order of the trial court, may proceed to wind up the affairs of said corporation and distribute the assets as the interests of the various stockholders may appear.

HURST, C.J., DAVISON, V.C.J., and RILEY, , BAYLESS, WELCH, and LUTTRELL, JJ., concur. GIBSON, J., dissents.