## SCOTT v. PRICE et al.

No. 14619—Opinion Filed Oct. 7, 1924.

**1. Receivers—Right to Appointment—Interference with Possession of Land.**

Courts of equity are extremely averse to any interference with the possession of a defendant claiming real estate under a legal title. If it seems doubtful whether or not the plaintiff will recover at the final hearing or whether or not there is imminent danger that the plaintiff will suffer irreparable loss, the application for a receiver will be denied and in the hearing and decision of such case all the presumptions are in favor of the defendant in possession under a legal title.

**2. Same—Erroneous Appointment without Notice.**

In an application for the appointment of a receiver, where it appears that both the original petition of the plaintiff and the application for a receiver filed by him are unverified, and where it fails to appear from an examination of the entire record that the delay which would result in giving notice of the application to the adverse party would defeat petitioner's rights or result in injury to him, it is error for the court to appoint a receiver without notice upon such unverified petition and application.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Murray County: A. C. Barrett, Judge.

Action by Ellis Price and Nina Price against William J. Scott, in which the receiver was appointed. From an order denying the motion of William J. Scott to vacate the appointment, the defendant appeals. Reversed, with instructions.

H. B. Martin, for plaintiff in error.

P. G. Moore, Young, Haste & Powell, and W. G. Long, for defendants in error.

Opinion by FOSTER, C. This appeal is prosecuted by Wm. J. Scott, plaintiff in error, defendant below, against Ellis Price and Nina Price, defendants in error, plaintiffs below, to reverse a judgment of the district court of Murray county, Okla., refusing to vacate an order entered on the 16th day of August, 1923, appointing a receiver.

The parties will be hereinafter referred to as they appeared in the trial court.

The record discloses that a petition was filed by the plaintiffs on the 2nd day of November, 1922, in the district court of Murray county, to cancel an oil and gas mining lease executed in 1916 by the plaintiffs to the defendant covering 509 acres of land in Murray county.

It appears that soon after the filing of this petition the court below appointed a referee to hear testimony and report to the court the amount and market value of certain quantities of liquid asphalt which it was claimed had been produced from a certain well drilled by the defendant upon the leased premises during the subsistence of the lease.

Whether the appointment of the referee was made by the court on its own motion or upon application and notice by one of the parties does not appear from the record before us.

It further appears that on the 16th day of November, 1922, a verified application for a receiver was filed by the plaintiffs to take charge of and operate the leased premises including the well thereon, market the production therefrom, collect the proceeds from such production, and hold same pending the final determination of the action then pending in said court.

No relief by way of receivership, however, was asked for in the original petition.

On the 10th day of March, 1923, the matter coming on for hearing upon the report of the referee and upon the application of plaintiffs for a receiver, the court entered an order reserving the question of appointment of a receiver until May 7, 1923, and requiring the defendant in the meantime to pay the plaintiffs the sum of $500 found to be due them as the value of their royalties in the production from said well, and requiring him to execute a bond in the sum of $2,000 to guarantee to the plaintiffs the payment of future royalties on liquid asphalt produced by the defendant from said well. The record discloses that at the time this order was made, no answer had been filed by the defendant, and that the cause was then pending upon a demurrer filed by defendant to plaintiff's petition.

On the 7th day of May, 1923, an order was made by the trial court postponing the hearing on the motion for the appointment of a receiver until the 24th day of May, 1923. On the 24th day of May, 1923, after both parties had announced ready for trial the plaintiffs were granted permission by the court to withdraw their announcement of ready, and 20 days were granted them within which to determine whether they would amend their petition.

Thereafter, and on the 4th day of June, 1923, an unverified amended petition was filed by the plaintiffs seeking a cancellation of the lease on certain grounds, but no relief by way of receivership was asked for in the petition.

On the 9th day of August, 1923, an unverified application for the appointment of a receiver was filed by the plaintiffs, and on the 11th day of August, thereafter, a receiver was appointed to take charge of the leased premises and the production therefrom, and hold the same pending final determination of the action.

The record fails to disclose any notice to the defendant of the application of plaintiffs for the appointment of a receiver on the 11th day of August.

The receiver immediately qualified and took charge of the premises as authorized and directed in said order. On the 16th day of August, 1923, the trial court overruled the motion of defendant to vacate and set aside the order appointing such receiver, to which action the defendant duly excepted. and brings the cause regularly on appeal to this court.

The first proposition relied upon by the defendant for a reversal is that the action of plaintiffs is an action for the breach of a covenant to pay royalties, and that in such a case cancellation is not the proper remedy.

An examination of the amended petition convinces us otherwise. As we interpret the petition, plaintiffs seek a cancellation of the lease upon the ground that the defendant, after discovering liquid asphalt in paying quantities, had not diligently and faithfully operated the leased premises, and by reason of a breach of the implied covenant in the lease to so operate had incurred a forfeiture of the lease.

It was held at an early day in this state that a court of equity would decree the forfeiture of an oil and gas lease on account of a breach of an implied covenant to diligently operate the property when such forfeiture will effectuate justice. See Indiana Oil & Gas Development Co. v. McCrory, 42 Okla. 137, 140 Pac. 610, quoting with approval the case of Brewster v. Lauyon Zinc Co., 140 Fed. 801, 77 C. C. A. 213.

As to whether or not the plaintiffs in their petition have alleged sufficient facts to bring them within the rule announced in the above cases is a matter which for the purpose of this case we are not called upon to decide. The record discloses very clearly, we think, that when the original lease was executed by the plaintiffs to the defendant in the year 1916 neither of the parties thereto contemplated the discovery and production under said lease of liquid asphalt—a heavy, tenacious substance unlike oil or natural gas, incapable of being transported through pipe lines, and for which there was no ready market until the substance had been refined or chemically treated in some manner.

The record discloses, also, that there was little or no market for this production in its crude state as it came from the well, and there could, therefore, be little foundation

for the fear that the defendant could or would fraudulently market and dispose of the mineral during the pendency of the action and convert the proceeds to his own use; nor could there be in the nature of things any great danger of the mineral in place in the earth being exhausted by drainage through operation on adjoining lands during the short time that would elapse until there could be a trial and determination of the issues presented by the petition on the merits.

In these circumstances we do not think the court justified in resorting to the extraordinary remedy of a receivership. Whatever may be the ultimate rights of the parties in view of the extraordinary and unusual situation presented under the facts in the case, no good purpose can be subserved by the appointment of a receiver.

The rule applicable to cases of this kind is announced very clearly, we think, in Folk v. U. S., 233 Fed. 177. where it is said in the opinion by Mr. Justice Sanborn:

"A court of equity is not without jurisdiction to appoint a receiver of real estate and of its proceeds in the possession of a defendant holding under a title regular on its face. But the cases in which it may exercise that power before a trial of the issues on the merits without a departure from the established principles and practice of equity jurisprudence are exceptions to the general rule, and clear proof of the following necessary facts is indispensable to bring such a case within the exceptions.

"First: The fact that there is imminent danger that unless a receiver is appointed the property or its proceeds will be deteriorated in value or wasted during the pendency of the suit. Second: The fact that the plaintiff will suffer irreparable loss from such deterioration or waste. But, if the defendant is solvent and abundantly able to respond to any such loss, or if he will give good bond so to respond, the loss can rarely be irreparable and the general rule is that a receiver should not be appointed. Third: The fact that on the pleadings and preliminary proofs there is a strong probability that the plaintiff will ultimately prevail on the merits.

"But courts of equity are extremely averse to any interference with the possession of a defendant claiming real estate under a legal title. They proceed in such a case with extreme caution and rarely interfere. If it seems doubtful whether or not the plaintiff will recover at the final hearing, or whether or not there is imminent danger that the plaintiff will suffer irreparable loss, the application for a receiver will be denied and in the hearing and decision of such a case all the presumptions are in favor of the defendant in possession under a legal title."

In such a situation the trial court certainly would not be authorized in appointing a receiver upon an unverified petition and motion without notice to the defendant. It is true that a verified application for a receivership had been filed as early as November, 1922, upon which the trial court had reserved action until May 7, 1923, but no complaint was made either on this date or the date to which the matter was adjourned, to wit, May 24th, that the defendant was in contempt of court, and this application was obviously abandoned by the action of plaintiff on May 24th in obtaining leave to file an amended petition, and in thereafter filing a new motion for a receiver which was unverified.

In this state of the record we think the defendant was entitled to notice of the application, and that the trial court erred in appointing the receiver without notice upon an unverified petition and application.

A careful examination of the application of plaintiff and of the entire record fails to show the existence of an emergency so great and loss to the applicant so imminent as to warrant appointment of such receiver without notice upon an unverified application and petition.

The rule of law applicable to a situation of this kind is stated in the case of Rashaw v. Straus Co. et al., 94 Okla. 141, 221 Pac. 62, where our court said in the second paragraph of the syllabus:

"Where the petition for the appointment of a receiver fails to state facts sufficient to show that the delay which would result in giving notice of the application to the adverse party would defeat petitioner's rights or result in injury to him it is error for the court to appoint a receiver without notice."

In the body of the opinion the court said, quoting with approval 17 Enc. Pl. & Prac. 736:

"A petition for receiver should be verified by affidavit and both the petition and the verifying affidavit must be positive as must also other affidavits filed in support of, or in opposition to, the application."

The court, in the opinion, further said, quoting with approval from 23 R. C. L. 38. as follows:

"Courts of equity are adverse to interference ex parte and will not ordinarily entertain an application for the appointment of a receiver except upon notice of the adverse party. Such a court has no more power than any other court to con-

demn a man unheard and to dispossess him of property prima facie his, and hand over its enjoyment to another on an ex parte claim to it. It should therefore, exercise extreme caution in the appointment of receivers on ex parte applications and be careful that a proper case is presented before it acts; and it should not be done without notice to the party whose property is to be affected, except in cases of the greatest emergency demanding the immediate interference of the court."

We think, from an examination of the whole record that the order appointing a receiver for the property of defendant, no notice of the application being given him, was improvidently made and should have been set aside on motion of defendant.

For the reasons stated we think the court erred in appointing a receiver for the property in controversy and in refusing to vacate the appointment on motion, and that the judgment of the trial court should be reversed, with directions to vacate and set aside its order appointing such receiver.

By the Court: It is so ordered