2012 OK CIV APP 21

**H.A. SAND SPRINGS, LLC,**
Plaintiff/Appellee,

v.

**LAKESIDE CARE CENTER, LLC,**
Defendant/Appellee,

and

**Oklahoma State Department of Health,**
Intervenor/Appellee,

and

**Jireh Medical, LLC, Intervenor/Appellant.**

No. 108,580.

Court of Civil Appeals of Oklahoma,
Division No. 4.

Oct. 18, 2011.

Certiorari Denied Feb. 13, 2012.

Kenneth E. Wagner, Brian J. Goree, Ambar I. Malik, Latham, Wagner, Steele & Lehman, P.C., Tulsa, Oklahoma, and Jack L. Atkinson, Edmond, Oklahoma, for Plaintiff/Appellee H.A. Sand Springs, LLC.

H.L. Holtmann, H.L. Holtmann Law Office, P.C., Tulsa, Oklahoma, for Intervenor/Appellant Jireh Medical, LLC.

John H. Stout, Norman, Oklahoma, for Defendant/Appellee Lakeside Care Center.[1]

Mary D. Womack, Patricia K. Cantrell, Oklahoma State Department of Health, Oklahoma City, Oklahoma, for Intervenor/Appellee Oklahoma State Department of Health.[2]

KEITH RAPP, Judge.

¶1 Trial court intervenor, Jireh Medical, LLC (Jireh), seeks review of an interlocutory order denying Jireh's motion to vacate the trial court's appointment of a receiver for Defendant, Lakeside Care Center, LLC (Lakeside), the operator of a Sand Springs, Oklahoma, nursing home.

## BACKGROUND

¶2 Plaintiff, H.A. Sand Springs, LLC (Plaintiff or HASS), owns property located in Sand Springs, Oklahoma, that was being leased by Lakeside for the operation of Oak Dale Manor Nursing Home (Nursing Home). Jireh is a vendor which has provided medical supplies to Nursing Home, and has not been paid for some of the supplies it provided pursuant to a contract with Lakeside.

¶3 HASS filed this action in June 2009, alleging that Lakeside was in default on its rent payments under its lease. HASS sought termination of the lease and appointment of a receiver to operate Nursing Home.

HASS alleged a receiver was needed not only to preserve Nursing Home's assets, but also "to protect the health, safety and welfare of the [Nursing Home] residents" until the home and its related property could be leased or sold to a person or entity approved by the Oklahoma State Department of Health (OSDH), the state licensing agency.

¶4 In July 2009, OSDH intervened, stating the agency was responsible for enforcing the Oklahoma Nursing Home Care Act, 63 O.S. 2001 & Supp.2010 §§ 1–1900.1 through 1–1952 (NHCA or the Act), and ensuring appropriate care for Nursing Home's residents. On the same day it approved OSDH's intervention, the court entered an order appointing Patty Eisenmann as Nursing Home's receiver (Receiver) pursuant to 12 O.S.2001 § 1551(6) of Oklahoma's general receivership statutes, 12 O.S.2001 §§ 1551 through 1559. Lakeside has not contested HASS's allegations, and Lakeside's counsel signed the order reflecting Lakeside's agreement to the receivership order. No party disputes that Lakeside was in default under its lease and that it was financially incapable of operating Nursing Home.

¶5 Among other things, the trial court's order authorized and required Receiver to "carry on the business and pay the ordinary expenses associated with operation" of Nursing Home, file monthly accounts, deposit additional net revenue in a separate account until further order of the court, apply for a license from OSDH, obtain any other necessary licenses, and post a $1,500 bond. According to the parties' briefs, at the time she was appointed, Receiver had been serving as an administrator at Nursing Home.

¶6 On December 1, 2009, HASS and Receiver filed a joint motion seeking court approval of an agreement with Lakeside, stating such an agreement was necessary to avoid delays in collecting revenues for Nurs-

1. Defendant/Appellee, Lakeside Care Center, LLC, has not entered an appearance or filed a response or brief in this appeal; however, its counsel entered an appearance in the trial court. Lakeside has never contested the position taken by Plaintiff as to the issues raised in this interlocutory appeal.

2. Intevenor/Appellee, Oklahoma State Department of Health, has entered an appearance in this appeal and filed a response to the petition in error reflecting that its position is aligned with Plaintiff's as to the issues raised herein. OSDH has not filed a brief on appeal, however.

ing Home "from the Medicare program." Two days later the court entered an order granting the motion and directing Receiver to pay to Lakeside "all monies collected by the Receiver related to operations of [Nursing Home] prior to August 3, 2009, without offsets."

¶ 7 Jireh intervened and moved to vacate the order appointing Receiver. Jireh asserted it was owed more than $30,000 for medical supplies it had provided to Nursing Home prior to August 3, 2009, for which Receiver had failed to pay; and that, in any event, the court lacked jurisdiction and had abused its discretion in appointing Receiver under the state's general receivership statutes.

¶ 8 At a hearing in May 2010, HASS and OSDH argued the receivership was necessary for the safety and protection of Nursing Home's residents. OSDH stated that if the trial court vacated the receivership, based on the admitted condition of Lakeside, the agency would be required to seek appointment of a receiver in any event. Again, Jireh did not deny the compromised financial condition of Lakeside, but argued against the court's jurisdiction to act as it had.

¶ 9 The trial court denied Jireh's motion to vacate, but required Receiver to review and evaluate Jireh's claim for unpaid billings to determine whether the claim was entitled to priority.[3] Jireh filed this appeal, seeking review of the court's denial of its request to vacate Receiver's appointment.

### STANDARD OF REVIEW

■ ¶ 10 The abuse of discretion appellate standard of review applies to a trial court's decision to appoint a receiver pursuant to 12 O.S.2001 § 1551. *See Guaranty Laundry Co. v. Pulliam,* 1948 OK 30, ¶ 16, 191 P.2d 975, 978. Similarly, a trial court's refusal to vacate its appointment of a receiver will not be reversed unless clearly against the weight of the evidence. *Grant Drilling Co. v. Rebold,* 1937 OK 719, ¶ 7, 75 P.2d 172, 173; *Wood v. Wood,* 1945 OK 26, ¶ 4, 156 P.2d 136, 137.

■ ¶ 11 Review under the abuse of discretion standard "includes appellate review of both fact and law issues," with a de novo standard applied to any questions of law. *Christian v. Gray,* 2003 OK 10, ¶ 43, 65 P.3d 591, 608. Abuse of discretion may also include review of the evidence, however; and if it appears that the trial court exercised its discretion in making a factual determination, "to an end or purpose not justified by, and clearly against, reason and evidence," an abused discretion may be found. *Id.* at ¶ 44, 65 P.3d at 609. However, when the decision is based upon sufficient evidence, and a record review does not reveal an abuse of discretion, an order appointing a receiver will not be disturbed. *Guaranty Laundry,* 1948 OK 30 at ¶ 16, 191 P.2d at 978.

### ANALYSIS

¶ 12 In its brief on appeal, Jireh advances five propositions of error, four of which essentially assert that the trial court either did not have subject matter jurisdiction or did not follow the proper statute in appointing Receiver in this case. Neither the record nor the law supports this position on these four.[4]

---

3. The record reflects that Receiver filed a report stating that only "critical" bills which were incurred by Lakeside prior to Receiver's appointment had been paid, and that some of the "critical" bills were owed to Jireh and had been paid. Though the report does not describe how the "priority" or "critical" nature of bills was determined, it stated that as to Jireh's unpaid bills there were at least "nine creditors who have priority over [Jireh] with an estimated outstanding debt of $814,500 that is owed by Lakeside ... and not Receiver." The record also contains supplements filed by Jireh and OSDH, with leave of court, indicating that OSDH has intervened in at least 20 other actions involving nursing home

receiverships created pursuant to the Title 12 general receivership statutes.

4. Jireh's "First Proposition of Error" asserts that, because OSDH is "singularly charged" with enforcing the NHCA and with regulatory oversight of nursing homes, the trial court was not authorized to "sidestep[ ]" the NHCA and its "approved regulatory scheme designed to protect the residents," by appointing a receiver under the general receivership statutes and then refusing to vacate the appointment. Jireh's "Second Proposition of Error" argues that, because the NHCA gives "detailed instruction" to OSDH on when and how it may ad-

¶ 13 "It is fundamental that jurisdiction is the authority by which courts take cognizance of and decide cases." *In re A.N.O.*, 2004 OK 33, ¶ 9, 91 P.3d 646, 649. There, the Court described the three elements necessary for a valid court order as "jurisdiction of the person, jurisdiction of the subject matter and the power of the court to decide the particular matter and render the particular judgment at issue." *Id.* Subject matter jurisdiction relates to a court's power to hear and determine cases of the kind presented. When the pleadings "state a case over which the jurisdiction of the court extends, jurisdiction attaches and the court has the power to hear and determine the issues involved." *Id.*

¶ 14 In contrast, the third element—"power to render the particular judgment" at issue—"focuses on the actual judgment sought or obtained and whether it violates mandatory law." *Okla. Dep't of Securities ex rel. Faught v. Blair*, 2010 OK 16, n. 22, 231 P.3d 645 (holding that no violation of mandatory law was shown by a district court's judgment in an equitable proceeding against innocent investors for unjust enrichment); *see also Gulfstream Petroleum Corp. v. Layden*, 1981 OK 56, 632 P.2d 376 (recognizing that a spacing order is a mandatory statutory prerequisite to entry of a valid pooling order).

¶ 15 Title 12 O.S.2001 § 1551 authorizes Oklahoma district courts to appoint a receiver in circumstances that include, in section 1551(1), upon the application by a party with an interest in property if the property is in danger of being lost, removed or materially injured; and section 1551(6), in "all other cases where receivers have heretofore been appointed by the usages of the courts of equity."

¶ 16 The pleadings filed by HASS alleged that one of Lakeside's primary assets—Nursing Home—was located on HASS's property and was the subject of the parties' lease; the asset's continued operation was in danger due to Lakeside's financial condition; and the residents were in danger of disruption and potential injury as a result. None of the parties dispute that Lakeside was financially insolvent and unable to pay its bills, or that Oklahoma district courts have previously appointed receivers over financially troubled corporations, including those operating nursing homes.[5] *See e.g., State ex rel. Warren v. Douglas*, 1939 OK 111, 89 P.2d 298; *Ward v. Inter–Ocean Oil & Gas Co.*, 1915 OK 926, 153 P. 115; *Cameron v. White*, 1927 OK 293, 262 P. 664. *See also, 64 B Venture v. American Realty Co.*, 194 A.D.2d 504, 599 N.Y.S.2d 567 (N.Y.App.Div. 1993). The pleadings filed by the parties herein clearly reflect a case whose subject matter comes within the parameters of section 1551 and over which the court has jurisdiction.

¶ 17 Jireh further argues that the district court lacked authority to appoint Receiver because the NHCA designates OSDH as the supervising agency for nursing homes in Oklahoma, and sets forth specific conditions and procedures which the agency must follow when exercising such authority. In this argument, Jireh relies on the long-standing rule of statutory construction that, "where

ministratively take control of a nursing home and appoint a temporary manager under OSDH supervision, the trial court improperly "circumvent[ed]" the OSDH regulations by appointing a "private party receiver under the supervision of the nursing home landlord who is one of the creditors" of Nursing Home. The "Third Proposition of Error" alleges error because the trial court appointed a receiver on the petition of the creditor/landlord when the NHCA addresses the conditions under which OSDH "may or should petition a court for appointment of a receiver," and where the "statutory predicate" for OSDH to seek such appointment was not established. In its "Fourth Proposition of Error," Jireh asserts error in the trial court's use of the general receivership statutes when the NHCA contains a specific statute "dealing with" receivership appointments of nursing homes.

5. In a supplement to the appellate record, OSDH included an affidavit listing a number of state district court cases in which parties have relied on Oklahoma's general receivership statutes to take control of other nursing homes; the list reflects that there are approximately 21 Oklahoma nursing homes currently being operated by court-appointed receivers pursuant to the Title 12 receivership statutes. According to the affidavit, OSDH, upon receipt of an order from a district court appointing a receiver over a nursing home pursuant to Title 12 O.S.2001 §§ 1551 et seq., issues a license to the receiver.

there are two statutory provisions, one of which is special and clearly includes the matter in controversy, and prescribes something different from the general statute," then the special statute controls. *City of Tulsa v. Smittle*, 1985 OK 37, ¶ 17, 702 P.2d 367, 371.

¶ 18 Although Jireh correctly describes the rule of statutory construction concerning special and general statutes, that rule does not apply here, for the reason there is no clearcut conflict between the statutory provisions at issue. Moreover, to the extent there is a conflict, the rule further requires that this Court attempt to give effect to both statutes if at all possible. *Id.* at ¶ 12, 702 P.2d at 370.

¶ 19 Clearly, the NHCA is designed to delineate the authority and the function of *the OSDH* with regard to nursing homes in Oklahoma. There is nothing in the Act, however, that makes these provisions the exclusive recourse or procedure for any person or entity dealing with a financially troubled nursing home. There also is no provision in the NHCA that expressly or impliedly limits, or prohibits, a district court from exercising its equitable powers under the general receivership provisions of Title 12.

¶ 20 OSDH, under certain circumstances, as set out under 63 O.S. Supp.2010 § 1-1930.2(A), must take all necessary actions to protect nursing home residents, including "petitioning the court" for a receiver to ensure adequate care for residents. Thus, the NHCA itself recognizes that state district courts have subject matter jurisdiction over petitions in which one of the parties seeks a receivership for adequate residential care.

¶ 21 Furthermore, the Act specifically contemplates that a nursing home might be placed in receivership by a person or entity other than OSDH. In this regard, 63 O.S. Supp.2010 § 1-1930.1(A) provides that a nursing home owner must notify OSDH "within twenty-four (24) hours of the occurrence of any of the events specified in subsection B of this section." Under section 1-1930.1(B)(7), one of those designated "events" is "[t]he filing of a petition *in any jurisdiction by any person* seeking appointment of a receiver for the facility." (Emphasis added).

¶ 22 Reading the general receivership statutes of Title 12, in conjunction with the provisions of the NHCA, compels a conclusion that recognizes a state district court as the appropriate forum to hear a nursing home receivership proceeding; and also recognizes that a receivership may be sought by a party other than OSDH, pursuant to 12 O.S.2001 §§ 1551 *et seq.* This Court concludes that the statutes as a whole recognize a state district court's power and authority to appoint a receiver at the behest of an interested party—in this case, a landlord—when the property at issue is a nursing home and the property lessor has defaulted on its lease, thereby endangering the continued residential status and stability of the property's residents.

¶ 23 On appeal, as it did in the trial court, Jireh relies heavily on *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999). In *Grupo*, the United States Supreme Court determined that a federal district court lacked equity jurisdiction to issue a preliminary injunction, at the behest of a creditor, to prevent a debtor from transferring assets in which the creditor had no existing lien or equitable interest. The majority held that, because such pre-judgment relief was not traditionally awarded by English courts in equity in 1789, any enlargement of the federal court's powers in this regard was up to Congress. *Grupo*, 527 U.S. at 318–33, 119 S.Ct. at 1968–75.

¶ 24 The *Grupo* decision, which recognizes the limits of a federal court's equity jurisdiction, is not dispositive of this state court proceeding, however. *Grupo* also is factually distinguishable in several respects, not the least of which is that this case concerns an equitable remedy sought by a landlord against its lessee, who has consented to the action, involving nursing home property which is the subject of the lease. Moreover, the Oklahoma Legislature, in 12 O.S.2001 § 1551(1), has provided that a creditor need only show in a state court proceeding that its "right to or interest in the property or fund, or the proceeds thereof, is probable," in order to seek a receiver. As a landlord, HASS demonstrated this probability in its plead-

ings. Jireh's reliance on *Grupo* in this case therefore is misplaced.

¶ 25 Jireh's fifth, and last, proposition of error on appeal asserts that the trial court should have vacated the receivership because the initial appointment was made *"ex parte,"* "without an evidentiary hearing or sworn evidence." This argument fails to recognize that the initial receivership appointment was hardly entered *ex parte,* inasmuch as the proceedings were conducted with the consent and participation of, not only the Defendant Lakeside but also the OSDH. The cases primarily relied upon by Jireh to support this argument—*Panama Timber Co., Inc. v. Barsanti,* 1980 OK 170, 619 P.2d 872, and *MIF Realty L.P. v. Duncan Development Co.,* 1995 OK CIV APP 25, 892 P.2d 664—are distinguishable on this basis as well, as both *Panama Timber* and *MIF* involved challenges by defendants who either did not admit the allegations against them, or did not consent to the receivership, or were not notified of the proceedings against them. None of these situations is present here. Jireh's suggestion that the court lacked personal jurisdiction to appoint a receiver for Nursing Home misconstrues the record and the law. Thus, this argument is rejected.[6]

## CONCLUSION

¶ 26 The trial court had jurisdiction to appoint a receiver for Nursing Home pursuant to the state's general receivership statutes, 12 O.S.2001 §§ 1551 *et seq.* The record contains sufficient evidence to support the trial court's decision, and the trial court did not abuse its discretion. The decision is therefore affirmed.

¶ 27 **AFFIRMED.**

GOODMAN, P.J., and THORNBRUGH, J., concur.

---

**6.** This determination does not mean that Jireh may not continue to pursue its claim against Lakeside and Receiver for the debt it contends it is owed. Though in the trial court Receiver appears to have denied its liability, that issue is not before the Court in this appeal.