TRUETT v. FREEDOM LEAF



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:TRUETT v. FREEDOM LEAF

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 TRUETT v. FREEDOM LEAF
2021 OK CIV APP 26
495 P.3d 153
Case Number: 118928
Decided: 04/19/2021
Mandate Issued: 06/30/2021
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2021 OK CIV APP 26, 495 P.3d 153

 

MARK TRUETT, II, an individual, Plaintiff/Appellee,
v.
FREEDOM LEAF, LLC, an Oklahoma limited liability company, and AARON GOLDBERG, an individual, Defendants/Appellants.

APPEAL FROM THE DISTRICT COURT OF
STEPHENS COUNTY, OKLAHOMA

HONORABLE KEN GRAHAM, TRIAL JUDGE

REVERSED

MaryGaye LeBoeuf, Oklahoma City, Oklahoma, and
E.J. Buckholts, II, Carl Buckholts, ELLIS & BUCKHOLTS, Duncan, Oklahoma, for Plaintiff/Appellee,

J. Blake Johnson, Justin R. Williams, Weston O. Watts, OVERMAN LEGAL GROUP, PLLC, Oklahoma City, Oklahoma, for Defendants/Appellants.

THOMAS E. PRINCE, JUDGE:

¶1 Defendants/Appellants Freedom Leaf, LLC ("Freedom Leaf") and Aaron Goldberg ("Goldberg") (collectively the "Appellants") appeal the trial court's July 16, 2020, Order denying the Motion to Vacate the trial court's July 9, 2020 Order Appointing Receiver, which Plaintiff/Appellee Mark Truett II ("Appellee") obtained ex parte. Appellant has asked this Court to review whether the notice given, the evidence supplied, and the inquiry made into the fitness of the receiver were sufficient to justify the Order Appointing Receiver and whether the appeal bond, which the trial court set at 500% of the receiver's bond, was proper. While notice is not a prerequisite for the ex parte appointment of a receiver, upon review we nevertheless find the trial court abused its discretion when it refused to vacate the Order Appointing Receiver because it was issued over and against the clear weight of the evidence. Moreover, the inquiry made into the fitness of the receiver was insufficient under the circumstances, and the appeal bond was set in error. For these reasons, the trial court's Order Appointing Receiver should have been vacated upon Appellants' Motion. Therefore, we reverse.

BACKGROUND

¶2 The record in this case begins with Appellee's July 7, 2020, Petition against Appellants for an accounting (Count I -- "Accounting at Law"; and, Count I "(Alternative) Equitable Accounting"), breach of fiduciary duty (Count II), and an emergency application to appoint a receiver (Count III). In his Verified Petition ("Petition"), Appellee made, inter alia, two concrete allegations: first, that his request for an accounting of Freedom Leaf's finances, to which he was entitled under the company's 2019 Operating Agreement ("Operating Agreement"), had gone unanswered; and second, that Goldberg, Freedom Leaf's other manager,[1] breached his fiduciary duty by mismanaging company assets. On these allegations, Appellee requested the trial court grant the provisional relief "that a receiver be appointed immediately to manage the affairs of Freedom Leaf" (emphasis added).

¶3 On July 9, 2020, just two days after Appellee filed his Petition, the trial court granted Appellee's request and signed an Order Appointing Receiver "for good cause shown, and . . . for the preservation of the assets and opportunities of [Freedom Leaf], and its respective members." No other reasons were cited in the trial court's order; and, no evidence was identified therein other than "the pleadings."[2] The trial court's Order Appointing Receiver was procured and entered before process was served on Freedom Leaf or Goldberg. In fact, Appellants had no notice of the Order Appointing Receiver until the court-appointed receiver and his deputies arrived, unannounced, at Freedom Leaf's Chickasha and Duncan stores on Friday, July 10, 2020, around 7:00 PM. According to several eyewitnesses, upon their arrival the receiver and his deputies merely produced the Order Appointing Receiver and, with little to no explanation, took operational control of the stores.[3] With the courts closed for the weekend, Appellants filed their Emergency Motion to Vacate ("Motion to Vacate") the trial court's Order Appointing Receiver on Monday, July 13, 2020. The trial court set the matter for a hearing on July 16, 2020, at which time the trial court denied Appellants' Motion to Vacate.

¶4 This interlocutory appeal timely followed.

Appellee's First Allegation: Denial of Accounting

¶5 On May 7, 2020, counsel for Appellee sent a certified letter to Freedom Leaf, to the attention of Goldberg, requesting an accounting of the company's finances in accordance with several provisions of Freedom Leaf's ostensible Operating Agreement,[4] which states, in pertinent part:

"The Company shall keep appropriate books and records . . . . These records are subject to inspection and copying at the reasonable request, and at the expense, of any Member during ordinary business hours."

"As soon as reasonably practicable after the end of each fiscal year, each Member shall be furnished with a copy of a balance sheet of the Company as of the last day of such fiscal year, a statement of income or loss of the Company for such year, and a statement of Net Cash Flow for such year."

"[E]ach member has the right to: (a) Upon reasonable notification, inspect and copy any of the Company records maintained pursuant . . . to this Agreement; and (b) Obtain from the Managers, from time to time upon reasonable demand, true and full information regarding the state of the business and financial condition of the Company . . . as is just and reasonable."

¶6 As of July 7, 2020, the date Appellee filed his Petition and made application for the emergency appointment of a receiver, Appellee had not received any of the financial information he had requested in his May 7, 2020, letter. At the July 16, 2020 hearing, the trial court asked Goldberg, Freedom Leaf's day-to-day manager and registered agent, for an explanation about why books and records had not been provided to Appellee:

THE COURT: Okay. So all of [the receipts and other financial information] would be available for inspection, wouldn't it?

[GOLDBERG]: 100 percent.

THE COURT: Okay. How soon would it take you to get [the receipts and other financial information] for inspection?

[GOLDBERG]: If [I] had access back to the company [(at the time of this hearing, Freedom Leaf was under the control of the receiver)], I could have them within a week.

. . . .

THE COURT: Okay. But you have [the receipts and other financial information] that's been requested?

. . . .

[GOLDBERG]: I got asked for accounting records. I sent that request to [my] attorneys . . . .

. . . .

I also sent [the] request [for receipts and other financial information] to my bookkeeper. And at the time because of, I mean, honestly [coronavirus], my accountant said she's--my bookkeeper and accountant said, hey, we're backed up right now. It's going to take us a while to get it.

. . . .

And they just got us--actually on July 15th is finally--is [w]hen they finally got our books caught up.

July 16, 2020 Tr. at 55--56.

¶7 Later in the proceedings, the court again asked Goldberg about the company's alleged failure to furnish books and records to Appellee. Mr. Johnson, Counsel for Appellant, made the initial reply:

MR. JOHNSON: Well, I mean, I'm afraid of putting words in the witness'[] mouth, but I believe [Goldberg] will explain that we did not provide the accounting in early May because we were in the--[Goldberg] thought we had a deal in hand for [Appellee] to leave the company in exchange for giving up his equity . . . .

THE COURT: So what you're saying is you didn't want to show him the accounting because he would think he was owed more money or what?

MR. JOHNSON: A deal was made. We believed the matter was resolved. And, thereafter, [Appellee] backed out of that deal.

THE COURT: Okay. . . . So we know what the excuse is for not furnishing the books.

. . . .

Goldberg further explained that:

[GOLDBERG]: We didn't furnish the books at the time because they weren't ready.

THE COURT: I don't know. I would like to know if there is any books to furnish.

. . . .

Okay. Look, Counsel, I could spend the rest of the afternoon in here, and we're not getting--it just makes me more doubtful of where all this money is going and where it's at.

Id. at 61--62.

Appellee's Second Allegation: Breach of Fiduciary Duty 

¶8 In addition to his allegation regarding the denial of an accounting of Freedom Leaf's finances, in his Petition Appellee also alleged Goldberg breached his fiduciary duty by mismanaging company assets. In particular, Appellee alleged Goldberg "used [] finances of Freedom Leaf to issue payroll to persons who are not employees of Freedom Leaf. . . . Said expenditures have been done without any formal approval of the members of Freedom Leaf." Notwithstanding this allegation, prior to the July 16, 2020, hearing--at which Appellee produced a check after the trial court claimed it "was shown a check that was allegedly written by [Freedom Leaf to another company]"[5]--Appellee provided no evidence Goldberg used Freedom Leaf's finances to issue payroll to persons employed by other entities. Ironically, Goldberg himself testified Freedom Leaf had indeed paid another entity's employee $614.72 for work completed for another entity. Goldberg also testified Freedom Leaf made over $200,000 worth of payments to another entity to, inter alia, buy equipment, issue payroll, and make rent. Rather than accept Appellee's characterization--i.e., that the payments were evidence of Goldberg's breach of duty to Freedom Leaf--Goldberg testified the payments were instead "loans" Freedom Leaf's members had agreed to make "until [the other entity] could start producing revenue." While Goldberg's counsel told the trial court he didn't think there were written records of the transactions, Goldberg also testified all members of Freedom Leaf, including Appellee, approved the loans, and that he had text messages to prove it. Although neither text messages nor other documentation were presented to demonstrate Appellee had agreed to the transfers, at the hearing on Appellants' Motion to Vacate Appellee did not challenge, or otherwise refute, Goldberg's testimony.

STANDARD OF REVIEW

¶9 A trial court's decision to appoint a receiver is reviewed for abuse of discretion. Mitchell v. Murphy, 1935 OK 361, ¶ 9, 43 P.2d 424, 426 (citation omitted). Orders appointing or refusing to appoint a receiver will not, therefore, "be disturbed unless an abuse of [] discretion is shown." Id. When a trial court's "decision is based upon sufficient evidence, and a record review does not reveal an abuse of discretion, an order appointing a receiver will not be disturbed." H.A. Sand Springs, LLC v. Lakeside Care Center, LLC, 2012 OK CIV APP 21, ¶ 11, 273 P.3d 73, 75 (citation omitted). If it appears, however, that a "trial court exercised its discretion in making a factual determination [] 'to an end or purpose not justified by, and clearly against, reason and evidence,' an abused discretion may be found." Id. (internal citation omitted). "Similarly, a trial court's refusal to vacate its appointment of a receiver will not be reversed unless clearly against the weight of the evidence." Id. ¶ 10 (citations omitted). A decision is not clearly against the weight of the evidence if it is based on more than allegations and conclusions and there is a reasonable showing based on the presentation of some evidence. MIF Realty L.P. v. Duncan Development Co., 1995 OK CIV APP 25, ¶ 8, 892 P.2d 664, 667. Where "there [is] no reasonable showing that the appointment [of a receiver] was predicated upon an authorized basis," however, the appointment of a receiver will be reversed (citation omitted) (emphasis in original). See id. Lastly, if appropriate, "review under the abuse of discretion standard 'includes appellate review of . . . law issues,' with a de novo standard applied to any question of law." H.A. Sand Springs, LLC, 2012 OK CIV APP 21, ¶ 11 (internal citation omitted).

ANALYSIS

¶10 Appellants have raised seven propositions of error, which we have grouped into four categories for ease of review: (1) notice given; (2) evidence supplied; (3) inquiry made; and, lastly, (4) setting the appeal bond. We address each proposition of error, in the appropriate category, below.

The "Insufficient Notice" Argument

¶11 Appellant first contends the trial court erred when it issued its July 9, 2020 ex parte Order Appointing Receiver without notice to Freedom Leaf or Goldberg. But we are not so persuaded. A trial court's decision to appoint a receiver is within its discretion. Mitchell, 1935 OK 361, ¶ 9 (citation omitted). The appointment of a receiver is nevertheless "a harsh remedy[, which generally] should not be done except in the case of substantial necessity." Skirvin v. Coyle, 1939 OK 249, ¶ 14, 94 P.2d 234, 237 (emphasis added). Appointing a receiver before a trial, much less a hearing on the merits, is even harsher, which is why plaintiffs must clearly demonstrate the "exceptions" to the general rule set forth above (i.e., that receivers should not be appointed on an ex parte basis). See Scott v. Price, 1924 OK 878, ¶ 5, 229 P. 618, 620 (quoting Folk v. United States, 233 F. 177, 183 (8th Cir. 1916)). Among the facts which must ordinarily be clearly proven to justify the appointment of a receiver are

[f]irst: [t]he fact that there is imminent danger that unless a receiver is appointed the property or its proceeds will be deteriorated in value or wasted during the pendency of the suit; [s]econd: [t]he fact that the plaintiff will suffer irreparable loss . . . . But if the defendant is solvent and abundantly able to respond to any such loss, or if he will give good bond so to respond, the loss can rarely be irreparable . . . . [; and, t]hird: [t]he fact that on the pleadings and preliminary proofs there is a strong probability that the plaintiff will ultimately prevail on the merits.

Id. (emphases added); see also Eason Oil Co. v. Oklahoma City Petroleum Corp., 1939 OK 318, ¶ 5, 94 P.2d 222, 223.

Where it seems doubtful "there is imminent danger that the plaintiff will suffer irreparable loss, the application for a receiver will be denied[,] and in the hearing and decision of such a case all the presumptions are in favor of the defendant in possession . . . ." Id.

¶12 Although Oklahoma statutory law does not explicitly forbid the appointment of a receiver ex parte, giving notice prior to the appointment of a receiver is "settled practice in chancery," Pyeatt v. Prudential Insurance Co., 1913 OK 250, ¶ 4, 131 P. 914, 916, "and a departure from this [settled practice] requires a state of facts showing the greatest emergency," id. ¶ 5 (citation omitted); cf. Rashaw v. Straus Co., 1923 OK 1129, ¶ 11, 221 P. 62, 65 (quoting Rees v. Andrews, 69 S.W. 4 (Mo. 1902)) ("All the cases concur in holding that before an order [appointing a receiver] is made the persons to be affected must have notice and an opportunity to be heard . . . .").

¶13 With respect to the claim of lack of notice of the ex parte Order Appointing Receiver, however, this Court extends deference to the trial court and finds no abuse of discretion concerning the trial court's initial issuance of the ex parte Order Appointing Receiver. This Court further finds that Appellants "are not in position to urge [their lack of notice] objection[] because[,] after the appointment was made[,] they filed [an emergency] motion [to vacate] . . . and offered evidence . . . and thereby entered a [special] appearance in the action . . . ." Union State Bank of Shawnee v. Mueller, 1918 OK 105, ¶ 3, 172 P. 650, 651; cf. Eason Oil Co., 1939 OK 318, ¶ 3 (explaining that because "the defendant . . . filed its motion to vacate . . . and [] appeared and participated in [a] hearing to determine whether the temporary appointment [of the receiver] should be made permanent, [the defendant] waived the error, if any, in making the appointment without notice"); Elwood v. First National Bank, 21 P. 673, 674 (Kan. 1889) (same).

The "Insufficient Evidence" Argument

¶14 Appellant next contends the trial court erred when it denied its Motion to Vacate. We agree. Notwithstanding the trial court's decision to grant the requested provisional relief via the ex parte Order Appointing Receiver (for which this Court extends deference to the trial court), we nevertheless find that the trial court abused its discretion when it denied the Motion to Vacate the Order Appointing Receiver. At the July 16, 2020, hearing on the Motion to Vacate, the Appellant was directed by the trial court to assume the burden to refute the alleged basis upon which the ex parte Order Appointing Receiver had been entered. Upon assuming that burden, the Appellant addressed the issues regarding the existence and location of the company's books and records, that the company complied with all federal and state tax filing requirements and that a reasonable basis existed for Goldberg's delay in responding to the Appellee's May 7, 2020, demand to inspect the company's books and records. Essentially, the Appellant addressed each of the known reasons that led to the entry of the ex parte appointment of a receiver. Rather than provide additional evidence justifying the Order Appointing Receiver, Appellee came forward with nothing in response to the testimony of Goldberg during the hearing on July 16, 2020. We, therefore, find that the record in this case does not "disclose [] evidence [that] was presented to the judge sufficient to support any of the statutory grounds for receivership." Panama Timber Co., Inc. v. Barsanti, 1980 OK CIV APP 18, ¶ 32, 633 P.2d 1258, 1265; cf. 12 O.S. § 1551. In other words, the Order Appointing Receiver was issued over and against the clear weight of the evidence. Consequently, it was error for the trial court to deny Appellant's Motion to Vacate Order Appointing Receiver.

¶15 The Order Appointing Receiver should also have been vacated because Appellee had plain and adequate remedies at law for all alleged wrongdoing. Skirvin, 1939 OK 249, ¶ 21; Rashaw, 1923 OK 1129, ¶ 13. Appellee's claims, both for an accounting and for breach of fiduciary duty, can be litigated in a court of law vindicated without resort to the extraordinary equitable remedy of the appointment of a receiver. Both because the evidence Appellee supplied was insufficient, and because the claims upon which Appellee based his request for the appointment of a receiver can be vindicated in a court of law, we find the trial court abused its discretion when it refused to vacate the Order Appointing Receiver.

The "Insufficient Inquiry Made" Argument

¶16 Appellant also contends the trial court erred by failing to make sufficient inquiry into the fitness of the receiver it appointed to take operational control of Freedom Leaf's stores. In this Court's opinion, this contention must be sustained. Before trial courts appoint receivers, several facts must ordinarily be clearly proven. See supra ¶ 11; cf. Scott, 1924 OK 878, ¶ 5. In order to determine whether the appropriate facts have been clearly proven, trial courts must make several inquiries, including "whether . . . a receiver, if appointed, could preserve the property during the pendency of the litigation . . . better and more surely than to leave it in the hands of the defendant." Wagoner Oil & Gas Co. v. Marlow, 1929 OK 150, ¶ 100, 278 P. 294, 307--08 (citation omitted).

¶17 In this case, the trial court's Order Appointing Receiver included several boilerplate justifications for its appointment of John P. Cornwell ("Cornwell") as receiver, including findings that Cornwell "is well qualified and experienced, holds no interests or claims against [Freedom Leaf], or any related parties, [and] is a disinterested person." The trial court's Order Appointing Receiver did not, however, establish that the trial court inquired into Cornwell's qualifications to operate Freedom Leaf's stores in accordance with 12 O.S. § 1560 (explaining that a "receiver may continue operations [of] the dispensary . . . upon submitting to the Oklahoma Medical Marijuana Authority ["OMMA"] . . . proof that the . . . receiver . . . meets the requirements and restrictions set forth in . . . Section 421 of Title 63") (emphases added) or 63 O.S. § 427.14(E)(12) (explaining that "[a]ll [] applicants [seeking licensure as a medical marijuana business] shall be required to submit a registration with the Oklahoma State Bureau of Narcotics and Dangerous Drugs Control ["OSBNDDC"] . . . .") (emphasis added).

¶18 In short, the trial court's Order Appointing Receiver provided no evidence Cornwell (1) submitted proof he meets the requirements set forth in 63 O.S. § 421 or (2) registered with the OSBNDDC. The trial court's failure to make sufficient inquiry into the qualifications of the receiver it appointed to take operational control over Freedom Leaf's stores placed Freedom Leaf in noncompliance with Oklahoma law. While the Oklahoma Medical Marijuana and Patient Protection Act is relatively new, and the case law comparably scant, this discretionary act was "manifestly unreasonable" and epitomizes an abused discretion. See Patel v. OMH Medical Center, Inc., 1999 OK 33, ¶ 20, 987 P.2d 1185, 1194 (citation omitted).

The "Improper Appeal Bond" Argument

¶19 Lastly, Appellant contends the trial court committed legal error when it set the appeal bond at 500% of the receiver's bond. We agree. Although we have been asked to review the trial court's refusal to vacate its ex parte Order Appointing Receiver, which is reviewed for abuse of discretion, "review under the abuse of discretion standard 'includes appellate review of . . . law issues,' with a de novo standard applied to any question of law." H.A. Sand Springs, LLC, 2012 OK CIV APP 21, ¶ 11 (internal citation omitted). Interpreting statutes, including the setting of an appeal bond under 12 O.S. § 993, is a question of law to be reviewed de novo. Corbeil v. Emricks Van & Storage, 2017 OK 71, ¶ 10, 404 P.3d 856, 858 (citations omitted). "In conducting de novo review this Court possesses plenary, independent, and non-deferential authority to examine the lower tribunal's legal rulings." Id. (citations omitted).

¶20 Under 12 O.S. § 993, parties prosecuting appeals of a district court's refusal to vacate an order appointing receiver must post a bond to discharge the receiver during the pendency of the appeal. Subsection C reads, in pertinent part:

If a receiver shall be or has been appointed, upon the appellant filing an appeal bond, with sufficient sureties, in such sum as may have been required of the receiver by the court or a judge thereof, conditioned for the due prosecution of the appeal and the payment of all costs or damages that may accrue to the state or any officer or person by reason thereof, the authority of the receiver shall be suspended until the final determination of the appeal . . . .

12 O.S. § 993(C) (emphasis added).

¶21 The trial court erroneously concluded that 12 O.S. § 993(C) empowered the trial court to set the appeal bond at 500% of the receiver's bond. A plain reading of this subsection "provides for the suspension of a receiver's authority if a party appealing the appointment of a receiver posts an appeal bond in the same amount which was required of the receiver when it was appointed." 5 CLYDE A. MUCHMORE & HARVEY D. ELLIS, OKLAHOMA APPELLATE PRACTICE § 1137 (2020 ed.) (emphases added). Any other reading strikes this Court as tortured and contrary to legislative intent, which is ascertainable from the plain language of the statute. Because the trial court's decision to set the appeal bond was based on an erroneous conclusion of law, an abuse of discretion occurred. Spencer v. Oklahoma Gas & Electric Co., 2007 OK 76, ¶ 13, 171 P.3d 890, 895 (citations omitted).

CONCLUSION

¶22 For these reasons, we find the trial court abused its discretion when it refused to vacate the Order Appointing Receiver upon Appellant's motion. Here, the trial court's Order Appointing Receiver and the injunctive relief that was granted in association with that appointment were issued over and against the clear weight of the evidence. Moreover, the inquiry made into the fitness of the receiver was insufficient under the circumstances, and the appeal bond was set in error. Therefore, we reverse with instructions to vacate the appointment of the receiver.

GOREE, P.J., and MITCHELL, J., concur.

FOOTNOTES

[1] Under the Operating Agreement, Appellee and Goldberg are co-managers.

[2] The Order Appointing Receiver dated July 10, 2020, did not merely appoint a receiver, on an ex parte basis, it also included various forms of injunctive relief (i.e., a temporary restraining order), including the following: that "[t]he Company, its members, and any persons acting under their respective direction are . . . enjoined from in any way disturbing the possession of the Assets or any other assets that are or become the subject of this Order, be prohibited and restrained from disposing of, dissipating, mishandling or misappropriating any of the Assets or other such assets, be prohibited from taking any actions that would, directly or indirectly, have an adverse impact on the value of the Assets, and be prohibited and restrained from collecting any proceeds, rents or other sums due to the Company relating to the Assets, all until further order of the Court. . . ."

[3] See Exs. 1--6 to Defs.' Mot. to Vacate. Notwithstanding Appellant's allegations the receiver and his deputies "behaved in an undignified and unprofessional manner," Appellant has not made any actionable allegations regarding the receiver's takeover of the stores.

[4] The Operating Agreement Appellee attached as an exhibit to his Petition was unsigned.

[5] See July 16, 2020 Tr. at 7, 11--13:

THE COURT: "I'm interested in several things potentially. I was shown a check that was allegedly written by one of the companies . . . ."

. . . .

Okay. All right. And the check that I saw was written on Freedom Leaf or Freedom Industries?

[APPELLEE'S COUNSEL] MR. BUCKHOLTS: The check that was produced to you, Your Honor, is--may I approach?

THE COURT: Yes, sir.

MR. BUCKHOLTS: I think you have copies, Counselor.

[APPELLANT'S COUNSEL] MR. JOHNSON: I don't.

. . . .

This is the first time I've seen this check.

. . . .

THE COURT: Well, wait a minute. Wait a minute. Counsel, your answer--you say you've never seen this check?

MR. JOHNSON: No. It's not a part of the record. It was not referenced in the Court's [O]rder. It wasn't supplied to counsel or the defendants because as is, you know, the point we're urging, no notice whatsoever was provided (emphasis added).

THE COURT: I understand that, except I've seen it. There is a copy of it somewhere in the file.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1995 OK CIV APP 25, 892 P.2d 664, 66 OBJ 1272, MIF Realty L.P. v. Duncan Development Co.
Discussed
 2012 OK CIV APP 21, 273 P.3d 73, H. A. SAND SPRINGS, LLC v. LAKESIDE CARE CENTER, LLC
Discussed at Length
 1980 OK CIV APP 18, 633 P.2d 1258, Panama Timber Co., Inc. v. Barsanti
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1939 OK 249, 94 P.2d 234, 185 Okla. 487, SKIRVIN v. COYLE
Discussed at Length
 1939 OK 318, 94 P.2d 222, 185 Okla. 448, EASON OIL CO. v. OKLAHOMA CITY PETROLEUM CORP.
Discussed at Length
 1913 OK 250, 131 P. 914, 38 Okla. 15, PYEATT v. PRUDENTIAL INS. CO.
Discussed
 1935 OK 361, 43 P.2d 424, 171 Okla. 326, MITCHELL v. MURPHY
Discussed at Length
 1918 OK 105, 172 P. 650, 68 Okla. 152, UNION STATE BANK OF SHAWNEE v. MUELLER
Discussed
 1923 OK 1129, 221 P. 62, 94 Okla. 141, RASHAW v. STRAUS CO.
Discussed at Length
 1929 OK 150, 278 P. 294, 137 Okla. 116, WAGONER OIL & GAS CO. v. MARLOW
Discussed
 2007 OK 76, 171 P.3d 890, SPENCER v. OKLAHOMA GAS & ELECTRIC COMPANY
Discussed
 1924 OK 878, 229 P. 618, 103 Okla. 150, SCOTT v. PRICE
Discussed at Length
 2017 OK 71, 404 P.3d 856, CORBEIL v. EMRICKS VAN & STORAGE
Discussed
 1999 OK 33, 987 P.2d 1185, 70 OBJ 1353, Patel v. OMH Medical Center, Inc.
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 1560, Foreclosed Medical Marijuana Dispensary - Rules
Cited
 12 O.S. 1551, Receiver - Appointment of
Cited
Title 63. Public Health and Safety
 Cite
Name
Level

 63 O.S. 427.14, Medical Marijuana Business License
Cited


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA